255 P.3d 805 (2011)
161 Wash.App. 770
Hans VOGEL and Dana Vogel, husband and wife, Appellants,
v.
CITY OF RICHLAND, a political subdivision of the State of Washington and Milo Bauder, and Jane Doe Bauder, husband and wife, Respondents.
No. 28470-1-III.
Court of Appeals of Washington, Division 3.
May 12, 2011.
*806 John Stephen Ziobro, Telquist Ziobro McMillen PLLC, Richland, WA, for Appellants.
George Fearing, Brian James Iller, Attorney at Law, Andrea Jean Clare, Leavy Schultz Davis & Fearing, Kennewick, WA, for Respondents.
SIDDOWAY, J.
¶ 1 Hans and Dana Vogel appeal the ruling of the Benton County Superior Court dismissing their Land Use Petition Act (LUPA)[1] petition as untimely under LUPA's 21-day statute of limitations. The issue raised by the appeal is whether a land use decision made on the basis of an oral request, to which there is an oral response, is "issued" under the LUPA as soon as there is some reference to it in a public meeting or public record. We construe "issuance" under the LUPA to require more than a mere reference; there must be a memorialization sufficient to identify the scope and terms of the decision. Because the Vogels' petition was timely under this construction, we reverse its dismissal and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND
¶ 2 Hans and Dana Vogel reside in the Crested Hills development in the city of Richland. The preliminary plat for Crested Hills approved in May 1994 included, as a local city street, Meadow Hills Drive. The street was reclassified a number of times under the city's street functional classification plan until 2001, when it was changed back to a local city street. The Vogels have an ongoing interest in the development of Meadow Hills Drive because it has been identified in proceedings before the city planning commission and city council as a route that might someday relieve traffic volumes on Morency Drive, where they live.
¶ 3 In May 2008, Mr. Vogel noticed construction of a rock retaining wall next to Meadow Hills Drive. He contacted city personnel to inquire about the wall and was told that Milo Bauder, the developer of Crested Hills, had been given verbal approval sometime in February 2008 to construct 1,100 feet of Meadow Hills Drive as a private street, gated on either end.
¶ 4 On June 10, 2008, Mr. Vogel and other area residents attended a meeting of the city council and, during the public comments session, expressed concern that Mr. Bauder had been given permission to build a portion of Meadow Hills Drive as a private street. They questioned city staffs reported decision to treat Mr. Bauder's request as a minor amendment to the Crested Hills plat, thereby *807 requiring no notice or hearing. Earlier the same day, in anticipation of citizen concerns, city staff had prepared a memorandum to council members, recounting the history of Mr. Bauder's request but without purporting to identify what, specifically, Mr. Bauder had requested, or what, specifically, city staff had agreed. The memorandum implied a general, nonfinal understanding, stating, in part, that "the developer, Milo Bauder, is now proposing the construction of a private drive that would connect with existing segments of Meadow Hills Drive at both the eastern and western boundaries of the proposed development phase," Clerk's Papers (CP) at 150; that city staff was currently reviewing the construction plans, which would include construction of an asphalt walkway between the public street sections to provide pedestrian access to a park within that phase of Crested Hills (one concern expressed by residents); and that the public works department "will approve the project once [it] determine[s] the project to be consistent with City development standards." CP at 152.
¶ 5 On June 17, 2008, city staff, through the city manager, prepared a second memorandum, further reporting to the city council in response to the concerns brought to light during the June 10 city council meeting. The memorandum defended city staff's conclusion that Mr. Bauder's request could be processed as a minor amendment to the plat, rather than a major one, as well as its handling of citizen questions and concerns.
¶ 6 On July 9, the city's public works department approved a Crested Hills, phase 8, entrance gate detail permit. The approval showed Meadow Hills Drive as a private street. On July 10, the city council signed a right of way construction permit, also issued without a public hearing and without notice to the public. This permit also showed Meadow Hills Drive as a private street.
¶ 7 On July 29, the Vogels filed a LUPA petition challenging the reclassification of the street. Mr. Bauder moved to dismiss the petition as untimely, arguing that the challenged land use decision was issued on June 10 by virtue of the city staff's memorandum to the city council on that day. The superior court determined the reclassification of Meadow Hills Drive was known to the Vogels and made public on June 10 and dismissed the petition. The Vogels appeal, challenging the dismissal of their petition as untimely and asking us to determine that the decision to reclassify a street from public to private constitutes a "major amendment" under the municipal code. Finally, the Vogels argue for the first time, in their reply brief in this appeal, that the LUPA limitations period does not apply to them because they lack standing under the statute.

ANALYSIS

I.
¶ 8 LUPA provides the exclusive means of judicial review of land use decisions by local jurisdictions, with limited exceptions. RCW 36.70C.030. The definition of land use decision encompasses ministerial land use decisions. Chelan County v. Nykreim, 146 Wash.2d 904, 931, 52 P.3d 1 (2002). The parties do not dispute that the city's ministerial decision to change a portion of Meadow Hills Drive from a public street to a private one falls within the broad scope of LUPA.
¶ 9 LUPA requires that a party file a petition for review with the superior court within 21 days of the date a land use decision is issued. RCW 36.70C.040(3). This 21-day statute of limitations is strict; the doctrine of substantial compliance does not apply. RCW 36.70C.040(2); Asche v. Bloomquist, 132 Wash.App. 784, 795-96, 133 P.3d 475 (2006), review denied, 159 Wash.2d 1005, 153 P.3d 195 (2007); Overhulse Neighborhood Ass'n v. Thurston County, 94 Wash.App. 593, 599, 972 P.2d 470 (1999).
¶ 10 When conducting judicial review under LUPA, we sit in the same position as the superior court and give no deference to its findings. Griffin v. Thurston County Bd. of Health, 165 Wash.2d 50, 54-55, 196 P.3d 141 (2008). We review the action based upon the administrative record before the court. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002); Kahuna Land Co. v. Spokane County, 94 Wash.App. 836, 841, 974 P.2d 1249 *808 (1999). Whether the Vogels' petition was timely turns on our construction of when, under the circumstances of this case, the land use decision was issued. Statutory construction is a question of law reviewed de novo under the error of law standard. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 175, 4 P.3d 123 (2000).
¶ 11 LUPA's stated purpose is "`timely judicial review.'" Habitat Watch v. Skagit County, 155 Wash.2d 397, 406, 120 P.3d 56 (2005) (quoting RCW 36.70C.010). It embodies the same principle expressed by Washington courts in pre-LUPA decisions that even illegal decisions must be challenged in a timely manner. Id. at 407, 120 P.3d 56. LUPA's statute of limitations begins to run on the date a land use decision is issued, RCW 36.70C.040(2)-(4), and, as observed by the Supreme Court in Habitat, "The statute designates the exact date a land use decision is `issued,' based on whether the decision is written, made by ordinance or resolution, or in some other fashion." 155 Wash.2d at 408, 120 P.3d 56. Because both Mr. Bauder's application and city staff's response were verbal in this case, the decision was "issued" on the date the decision was entered into the public record. RCW 36.70C.040(4)(c).
¶ 12 In Habitat, the Supreme Court elaborated on the likely meaning of RCW 36.70C.040(4)(c), shedding light on what is meant by entering a decision into the public record:
[I]f a decision is neither written (as provided for in subsection (a)) nor made by ordinance or resolution (subsection (b)), then it is issued on the date it is entered into the public record. Subsection (c), then, does not include decisions covered under subsections (a) and (b), but would include other types, such as decisions made orally at a city council meeting. These decisions would be issued when the minutes from the meeting are made open to the public or the decision is otherwise memorialized such that it is publicly accessible.

155 Wash.2d at 408 n. 5, 120 P.3d 56 (emphasis added). The definition of land use decision also informs our determination of when it can be entered into the public record. By definition, a land use decision is a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination. Former RCW 36.70C.020(1) (1995). When read in conjunction with RCW 36.70C.040(4), the statute provides that a land use decision must be final before it can be issued. The Washington Supreme Court has supplied a dictionary definition to explain what constitutes a "final determination" in the context of LUPA. See, e.g., Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wash.2d 440, 452, 54 P.3d 1194, 63 P.3d 764 (2002) (concluding that a "`final decision' is `[o]ne which leaves nothing open to further dispute and which sets at rest cause of action between parties'" (quoting BLACK'S LAW DICTIONARY 567 (5th ed. 1979))).
¶ 13 We first reject Mr. Bauder's argument that the final determination to be considered is city staff's decision that substitution of a private street would constitute a minor plat amendment, not a major plat amendment, as reflected in the June 10 and June 17, 2008 memoranda to the city council. That determination was not a land use decision, since it does not "regulat[e] the improvement, development, modification, maintenance, or use of real property." Former RCW 36.70C.020(1)(b). It was only a decision about the process to be followed in making a land use decision. The trigger for the 21-day limitations period is the final land use decision itself, not any earlier procedural decision, even if a flawed procedure leading up to the land use decision might later be a basis for a LUPA challenge under RCW 36.70C.130(a) (authorizing relief if the body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless). The trial court erred when it accepted Mr. Bauder's argument that this decision about procedure was a land use decision triggering the 21-day limitations period under LUPA.
¶ 14 We next reject Mr. Bauder's argument that a retaining wall permit issued to him by the city on May 1, 2008 triggered the 21-day limitations period. A city's issuance of a construction permit constitutes issuance of a final land use decision under LUPA. Samuel's Furniture, 147 Wash.2d at 453, 54 *809 P.3d 1194, 63 P.3d 764. But the Vogels' LUPA petition does not challenge the retaining wall permit, collaterally or otherwise. Nor did the retaining wall permit "memorialize" the decision that is under attackpermission to substitute a private road"such that it [was] publicly accessible" as provided by Habitat, 155 Wash.2d at 408 n. 5, 120 P.3d 56. The retaining wall permit gave no indication what classification of road would later be constructed, or that a road will be constructed at all.
¶ 15 The June 10 and June 17, 2008 memos only refer to a decision having been made by city staff to permit substitution of a private road; they do not purport to memorialize the terms of the decision, even summarily. It is inconceivable that city staff granted Mr. Bauder carte blanche to substitute whatever private road he would like. And we know from the memoranda that there was some understanding that an asphalt walkway would be provided to the interior park, in lieu of sidewalk access, that would be lost with construction of a private road. The memoranda discuss the private road proposal in nonfinal terms. Indeed, the clear implication from the two June memoranda is that in lieu of memorializing whatever understandings Mr. Bauder and city staff reached about the road, they agreed that Mr. Bauder would provide engineering drawings and receive a permit at such time as his drawings reflected a proposal acceptable to the city.
¶ 16 Whether an oral land use decision is simple or complex, until its scope and terms have been memorialized in some tangible, accessible way, even the most diligent citizen cannot know whether the decision is objectionable or, if it is, whether there is a viable basis for a challenge. Moreover, a citizen challenging the decision has nothing to present to the superior court, or to us, for review. This case exemplifies the problem; there is literally nothing in our record that purports to tell us exactly what the city staff authorized Mr. Bauder to do.
¶ 17 Accordingly, the earliest that a final land use decision was issued allowing Mr. Bauder to substitute a private road for the public road provided by the Crested Hills plat was on July 9, 2008, the date of the first public record finalizing the change. The petition was therefore timely. We reverse the superior court's decision dismissing it.

II.
¶ 18 The Vogels assign error "to the extent [the superior court] ruled the reclassification of a public street to a gated private street was a minor administrative change and did not require public notice." Br. of Appellant at 2. We agree with Mr. Bauder that the superior court did not address this issue. We will not review an issue that was not reached by the superior court.
¶ 19 We also will not address the Vogels' standing argument raised for the first time on appeal, in their reply brief. RAP 2.5(a).
¶ 20 We reverse and remand for proceedings consistent with this opinion.
WE CONCUR: KORSMO, A.C.J., and BROWN, J.
NOTES
[1] Chapter 36.70C RCW.