[No. 29806-0-III.   Division Three.   January 26, 2012.]

APPLEWOOD ESTATES HOMEOWNERS ASSOCIATION ET AL.,
*Petitioners*, v. THE CITY OF RICHLAND ET AL.,
*Respondents.*

*Bryce J. Wilcox*, for petitioners.

*Joel R. Comfort* (of *Miller Mertens Comfort Wagar & Kreutz PLLC*), for respondents.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

¶1 BROWN, J. — Today, we review a land use dispute. A court has jurisdiction under Washington's Land Use Petition Act (LUPA), chapter 36.70C RCW, to review land use decisions if review is requested within 21 days of the decision. RCW 36.70C.040(3). Applewood Estates Homeowners Association, Brantingham Greens Homeowners Association, Ross Neely, Mary Joanne Neely, Michael Laudisio, and Sheila Laudisio (collectively Neighbors) challenge the city of Richland's (City) June 16, 2010 administrative decision entered on the public record to approve an

amendment to the Badger Mountain Planned Unit Development (PUD). Under the Richland Municipal Code (RMC), the City's administrative decision was subject to review by the Board of Adjustment, a five-member board appointed by the Richland City Council. RMC 23.70.040. The Neighbors failed to appeal to the Board of Adjustment, instead suing in the superior court almost 4 months later. The court found the amendment was a major amendment violating LUPA. On appeal, Badger Mountain Apartments I LLC, Badger Mountain Apartments II LLC, Badger Mountain Apartments III LLC, and Wolff Enterprises II LLC[1] (collectively Developer) (and amicus curiae Association of Washington Business) partly contend the trial court lacked jurisdiction for the Neighbors' failure to initiate review within 21 days under RCW 36.70C.040(3). We agree and reverse.

## FACTS

¶2 This LUPA action concerns the Badger Mountain PUD, located in Richland. In June 2005, the City was presented with a proposal to create the PUD. The PUD proposal included a request for the phased construction of 365 housing units for those who were 55 and older, including for-sale single family residences, rental duplexes, attached town homes, and apartments, and an assisted living care facility. Access to the PUD was planned from both Gala Way and Westcliffe Boulevard. The PUD plan contemplated construction in six phases: 120 single family residences would be completed in phases 1 and 2 on roughly one-half of the 60 acres. Phases 3-6 were to be constructed on the remaining one-half. Phase 3 was to be a "multi-family type apartment building of 90 independent living and 45 Assisted living units." Clerk's Papers (CP) at 303-04. Phases 4 and 5 were to include for-rent duplexes, and phase 6 was to be for-sale attached row-house-type zero-lot line structures.

---

[1] The City is not a party to this appeal.

¶3 Under the PUD plan, phase 3 was to be constructed on 11 acres on parcels 2C and 2E, with the apartment complex to be located in the center of the site and buffered by open areas landscaped by trees and berms. The main lodge consisted of two distinct buildings with a central two-story main entry connector. The plan contemplated a three-story independent living wing with 90 apartments, while the 45 assisted living units were going to be in a two-story structure. The applicant described use of this property as "[s]imilar in use to a[n] R3 zone." CP at 335. R3 zoning is for multiple-family residential. RMC 23.08.010.

¶4 Phases 4-6 were to be constructed on parcels 2D, 2E, and 2F on a total of 22 acres. Eighty-two duplexes and 34 townhomes were planned in these phases. Accordingly, for the 30 plus acres of land on which phases 3-6 were to be constructed under the original PUD, 251 living units were permitted, including the 45-unit assisted living center. On or about October 4, 2005, the City approved the Badger Mountain PUD through Ordinance No. 32-05.

¶5 In May 2007, the city staff recommended to the city council that it approve the first phase of the Badger Mountain PUD development, phase 2A. Although the original Badger Mountain PUD contemplated 60 acres of senior residences, the May 2007 subdivision plat did not mention an age restriction. The Badger Mountain covenants, conditions, and restrictions impose age restrictions.

¶6 In 2007, the prior property owner petitioned the City for a PUD amendment that reconfigured the housing units in phases 3-6. Considering the factors set forth in RMC 23.50.070, Rick Simon, the City's development services manager, approved the amendment; no appeal followed. In 2008, the prior property owner successfully asked the City to amend PUD phases 3-6, proposing an assisted living care facility. In March 2010, the prior property owner again requested to modify phases 3-6 of the PUD to allow 180 apartments and 72 lots in exchange for donating park land to the City.

¶7 After analyzing the issues, Mr. Simon rejected the proposed amendment, concluding that it increased the density of the PUD and was therefore a "major modification" under RMC 23.50.070(C) that required a new application for preliminary PUD approval. CP at 572. In June 2010, the Developer applied for a modification to the PUD to allow for a 166 unit non-age-restricted apartment complex on 15 acres of parcel 2C. Under the proposal, the remaining 15 acres were going to remain vacant. The proposed location of the complex was approximately the same as that contemplated under the original PUD. On June 4, 2010, Mr. Simon forwarded the proposal to members of several city departments for comment and evaluation. Mr. Simon explained to the Developer how many apartments could be constructed under a minor amendment in a letter dated June 9. Mr. Simon reminded the Developer that density to the PUD could not be increased without obtaining approval through a major amendment, which would involve the submittal of a new application. The Developer then submitted plans for a 176-unit apartment complex on the 15 acres.

¶8 Critical here, on June 16, Mr. Simon provided a written decision, *a public record*, administratively approving the minor amendment requested by the Developer under RMC 23.50.070, allowing 177 non-age-restricted apartment units. Apparently, the City did not approach the change as material to density. On August 4, the City confirmed that the Developer's application constituted a "minor amendment . . . and is hereby approved as, a revised final PUD plan as provided under RMC Sections 23.50.050 and 23.50.040(D)." CP at 579. On September 20, the City issued building permits to the Developer to construct the apartment buildings. Not until October 4 did the Neighbors file a LUPA petition, challenging the City's June 16 decision that the modifications to the PUD were minor.

¶9 The Neighbors alleged they learned of the June 16 decision on or about September 17. They contended the City

erroneously determined that the PUD changes were minor, arguing instead they were major changes requiring public notice, and asked the court to set aside the June 16 decision. The Neighbors asserted the building permits issued by the City on September 20 were invalid because the final PUD plans for the property were not approved by the city council. On December 10 the court considered the Developer's and the City's motions to dismiss. Among other things, the Developer and the City partly, and unsuccessfully, argued the Neighbors failed to file their LUPA petition within 21 days of the City's June 16 decision. The Neighbors prevailed at trial on various grounds not relevant to the outcome of this appeal. The Developer appealed.

## ANALYSIS

¶10 The dispositive issue is whether the Neighbors' LUPA petition was timely under RCW 36.70C.040(3). Because we agree with both the Developer and amicus curiae that the petition was filed long after the 21-day period had expired, we do not address the Developer's contentions related to exhaustion of administrative remedies, standing, and lack of substantial evidence to support a major PUD amendment finding.

¶11 LUPA requires a party to petition for review with the superior court within 21 days of the date a land use decision is issued. RCW 36.70C.040(3). This 21-day statute of limitations is strict; the doctrine of substantial compliance does not apply. RCW 36.70C.040(2); *Asche v. Bloomquist*, 132 Wn. App. 784, 795-96, 133 P.3d 475 (2006).

¶12 We sit in the same position as the superior court when conducting judicial review under LUPA and give no deference to its findings. *Griffin v. Thurston County Bd. of Health*, 165 Wn.2d 50, 54-55, 196 P.3d 141 (2008). We review the action based upon the administrative record before the court. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002). Whether

the Neighbors' petition was timely turns on our decision of when, under the case facts, the land use decision was issued. "Statutory construction is a question of law reviewed de novo under the error of law standard." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 175, 4 P.3d 123 (2000).

¶13 Our legislature has stated that the purpose of LUPA is " 'timely judicial review.' " *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 406, 120 P.3d 56 (2005) (quoting RCW 36.70C.010)). Our Supreme Court "strongly favor[s] the finality of land use decisions." *Mellish v. Frog Mountain Pet Care*, 172 Wn.2d 208, 215, 257 P.3d 641 (2011). Pre-LUPA, Washington courts recognized that even illegal decisions must be challenged in a timely manner. *Habitat Watch*, 155 Wn.2d at 407. LUPA's statute of limitations begins to run on the date a land use decision is issued. RCW 36.70C.040(3). As observed by the Supreme Court in *Habitat Watch*, "[t]he statute designates the exact date a land use decision is 'issued,' based on whether the decision is written, made by ordinance or resolution, or in some other fashion." 155 Wn.2d at 408; RCW 36.70C.040(4)(a).

¶14 In *Vogel v. City of Richland*, 161 Wn. App. 770, 777, 255 P.3d 805 (2011), this court held, "Because both [the] application and city staff's response were verbal in this case, the decision was 'issued' on the date the decision was entered into the public record." RCW 36.70C.040(4)(c). The *Vogel* court held the time between when the decision entered the public record and when the petitioners filed their petition was within the 21-day period. 161 Wn. App. at 777. Here, unlike in *Vogel*, the decision was written. Both parties provided supplemental briefing on *Vogel*, and both agree *Vogel* does not have a substantial impact on this case. More instructive is *Samuel's Furniture, Inc. v. Department of Ecology*, 147 Wn.2d 440, 452, 54 P.3d 1194, 63 P.3d 764 (2002).

¶15 In *Samuel's Furniture*, the Washington Supreme Court held, "LUPA does not require that a party

receive individualized notice of a land use decision in order to be subject to the time limits for filing a LUPA petition." *Id.* at 462. The concurring opinion in *Habitat Watch*, 155 Wn.2d at 420, confirmed the scope of the Supreme Court's prior holding in *Samuel's Furniture* on notice. Justice Chambers stated, "In *Samuel's Furniture*, we effectively approved the practice of giving no notice, even to those entitled to it by law." *Habitat Watch*, 155 Wn.2d at 420 (Chambers, J., concurring) (citation omitted). Under *Samuel's Furniture*, LUPA does not mandate specific, personal notice of a land use decision for the 21-day clock to begin.

¶16 In *Habitat Watch*, the Supreme Court elaborated on the likely meaning of RCW 36.70C.040(4)(c) regarding entering a decision into the public record:

> [I]f a decision is neither written (as provided for in subsection (a)) nor made by ordinance or resolution (subsection (b)), then it is issued on the date it is entered into the public record. Subsection (c), then, does not include decisions covered under subsections (a) and (b), but would include other types, such as decisions made orally at a city council meeting. *These decisions would be issued when the minutes from the meeting are made open to the public or the decision is otherwise memorialized such that it is publicly accessible.*

155 Wn.2d at 408 n.5 (emphasis added).

¶17 Here, Mr. Simon provided a written decision, a public record, administratively approving the minor amendment requested by the Developer on June 16, 2010. *See* RCW 42.56.010(2) ("Public record" includes any writing containing information relating to the conduct of government.). On August 4, the City confirmed the Developer's application constituted a "minor amendment . . . and is hereby approved as, a revised final PUD plan as provided under RMC Sections 23.50.050 and 23.50.040(D)." CP at 579. Taken together, these actions were a "memorialization sufficient to identify the scope and terms of the decision." *Vogel*, 161 Wn. App. at 774. The City then issued building permits to the Developer to construct the apartment buildings. Almost four

months after the June 16, 2010 decision, the Neighbors filed their LUPA petition in the trial court.

¶18 Applying the legal principles derived from *Samuel's Furniture, Habitat Watch,* and *Asche,* we conclude the Neighbors were not entitled to personal notice, distinct from the notice contemplated by the filing of a public record as discussed in RCW 36.70C.040(4)(c). Accordingly, we hold the Neighbors' LUPA petition filed nearly four months after the City made its determination was time barred.

¶19 Our holding is consistent with Washington's " 'strong public policy supporting administrative finality in land use decisions.' " *Chelan County v. Nykreim,* 146 Wn.2d 904, 931, 52 P.3d 1 (2002) (quoting *Skamania County v. Columbia River Gorge Comm'n,* 144 Wn.2d 30, 49, 26 P.3d 241 (2001)). Moreover, the remedy for future project opponents in the Neighbors' position is legislative. " '[T]he Legislature is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." *Riehl v. Foodmaker, Inc.,* 152 Wn.2d 138, 147, 94 P.3d 930 (2004) (alteration in original) (quoting *Friends of Snoqualmie Valley v. King County Boundary Review Bd.,* 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992)). The legislature has amended LUPA since *Samuel's Furniture* and *Habitat Watch* but has not changed any provision relating to actual notice, the date a land use decision is issued, or the 21-day time limitation. *See Mellish,* 172 Wn.2d at 215 (discussing Laws of 2010, chapter 59, amending the definition of "land use decision" in LUPA).

¶20 In sum, the trial court should have dismissed the petition as untimely. Because the court lacked jurisdiction to proceed, it is unnecessary to address the other contentions raised by the parties noted above as the same would

be, at best, dicta or amount to an undesirable advisory opinion.

¶21 Reversed.

Korsmo, A.C.J., and Sweeney, J., concur.

Reconsideration denied February 27, 2012.