IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEVE BERSCHAUER, | ) | No. 34970-5-III |
| Appellant, | ) | |
| v. | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF ENTERPRISE | ) | |
| SERVICES; PUGET SOUND ENERGY, | ) | |
| INC., a Washington State Public Utilities | ) | |
| Corporation; FYI PROPERTIES, a | ) | |
| Washington nonprofit corporation; THE | ) | |
| BANK OF NEW YORK MELLON | ) | |
| TRUST COMPANY, NATIONAL | ) | |
| ASSOCIATION, as Trustee Under | ) | |
| Indenture of Trust Dated As Of August 1, | ) | |
| 2009 and THE CITY OF OLYMPIA, | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Steve Berschauer appeals the trial court's dismissal of his

declaratory judgment action seeking to invalidate a boundary line adjustment approved

by the city of Olympia (City) in September 2011. His action was time-barred under the

Land Use Petition Act (LUPA), chapter 36.70C RCW. We affirm.

PROCEDURAL BACKGROUND

On December 4, 2015, Steve Berschauer filed the action below, seeking a

declaration that the city of Olympia's boundary line adjustment to property the State of

Washington represented to be state-owned was void ab initio. He sought a court-ordered

reversion of boundaries to those existing before the adjustment. Mr. Berschauer claimed

that contrary to the requirements of a City ordinance, the City approved an application for

the adjustment he had not signed, even though it affected real property to which he held

title by adverse possession.

Former Olympia Municipal Code (OMC) 17.30.030 (2006)[1] provided that the

City's planning department was to certify as compliant and approve a proposed boundary

line adjustment "if and only if" seven requirements were met. One was that "[t]he map

includes acknowledged signatures of all parties having an interest in lots the lines of

which are being adjusted." *Id.*; Clerk's Papers (CP) at 14-15. Former OMC 17.30.040

(2006), the code provision following the list of requirements, stated that "the boundary

line adjustment shall not be final until . . . [t]here is compliance with the requirements [in

OMC 17.30.030]." CP at 15. The map submitted by the State in support of its proposed

---

[1] Olympia Ordinance 6408, § 6 (2006). The provision has since been amended by Olympia Ordinance 7072, § 1 (2017).

2

boundary line adjustment bore the acknowledged signature of only the director of its Department of Enterprise Services.

Attached to Mr. Berschauer's complaint in this action was an order of the Thurston County Superior Court entered two weeks earlier in Cause No. 13-2-02519-9, determining by summary judgment that Mr. Berschauer and his predecessors had adversely possessed a part of the property affected by the State's proposed boundary line adjustment. The order decreed that the 10 year period of adverse possession started with the building of a fourplex that it is undisputed took place in the 1960s.[2]

Mr. Berschauer's complaint acknowledged that the boundary line adjustment being challenged for the first time in 2015 had been approved by the City "in late 2011, under BLA[3] No. 11-0135." CP at 6. It was later demonstrated that the boundary line adjustment was recorded on December 21, 2011.

In answering the complaint, the defendants asserted that Mr. Berschauer's claim was barred by the statute of limitations. The City soon moved under CR 12(b)(6) and

---

[2] Final orders in that action have also been appealed by Mr. Berschauer. The trial court's determination that Mr. Berschauer and his predecessors acquired title to property by adverse possession was not cross appealed by the State. See our decision in *Steve Berschauer v. State of Washington Department of General Administration, et al.*, Court of Appeals No. 35502-1-III (unpublished), also being filed today.

[3] Boundary line adjustment (BLA).

3

12(c) to dismiss the complaint as time-barred under LUPA, and the State joined the motion. At the hearing on the motion, the fact that Mr. Berschauer had remedial options other than collaterally attacking the boundary line adjustment was raised in questioning by the trial court and mentioned in its oral ruling. *See* Report of Proceedings (Feb. 26, 2016) at 7-8, 21. The court granted summary judgment to the City and State on the basis that Mr. Berschauer's action was time-barred, however. Mr. Berschauer appeals.

## ANALYSIS

The legislative purpose in enacting LUPA was to "establish[ ] uniform, expedited appeal procedures and uniform criteria for reviewing [land use] decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. "[LUPA] establishes a uniform 21-day deadline for appealing the final decisions of local land use authorities and is intended to prevent parties from delaying judicial review at the conclusion of the local administrative process." *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 406, 120 P.3d 56 (2005). LUPA's statute of limitations begins to run on the date a land use decision is "issued" and dictates the exact date a decision is issued based on the nature of the decision. *Id.* at 409; RCW 36.70C.040(4)(a).

A declaratory judgment action challenging the validity of a boundary line adjustment is subject to review under LUPA. *Chelan County v. Nykreim*, 146 Wn.2d 904, 929, 52 P.3d 1 (2002). Despite a four year time gap between the adjustment and his lawsuit, Mr. Berschauer contends his claim was not time-barred because the City's failure

4

No. 34970-5-III
*Berschauer v. Dep't Enter. Servs., et al.*

to abide by the municipal code's signature requirement made its approval of BLA No. 11-0135 void ab initio, and subject to challenge at any time. He also makes passing argument, citing *Habitat Watch*, that the 21-day limitations period never began to run or that it began to run only when he prevailed, in part, on his adverse possession claim.

We review de novo a trial court's decision to grant a CR 12(b)(6) motion. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007).

*LUPA's 21-day statute of limitations applies*

By its terms, LUPA applies to claims that a "body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process." RCW 36.70C.130(1)(a). It also expressly applies to claims that "[t]he land use decision is outside the authority or jurisdiction of the body or officer making the decision." RCW 36.70C.130(1)(e). In *Habitat Watch*, our Supreme Court relied on this language to hold that under LUPA, "defects in land use determinations that could have resulted in decisions that were void ab initio under pre-LUPA cases fall within LUPA, with its express 21-day limitation period." 155 Wn.2d at 407. Elsewhere, the Court stated that a challenge to a land use decision "lies within LUPA—even where the decision is allegedly void." *Id.* at 408.

Mr. Berschauer tries to avoid this clear holding of *Habitat Watch* by suggesting that the decision is anomalous and perhaps no longer good law after *South Tacoma Way, LLC v. State*, 169 Wn.2d 118, 233 P.3d 871 (2010) and *Bilanko v. Barclay Court Owners*

5

*Ass'n*, 185 Wn.2d 443, 450, 375 P.3d 591 (2016). Both of those cases apply the historic distinction between actions that are only voidable and therefore subject to the statute of limitations, and those that are void and "subject to challenge and invalidation at any time, perhaps years later." *South Tacoma*, 169 Wn.2d at 124. But *South Tacoma* and *Bilanko* did not involve a challenge to land use planning decisions subject to LUPA. They represent a distinction between void and voidable decisions that exists in non-LUPA cases but that *Habitat Watch* holds does not apply under LUPA.

We also agree with the City and State that even if land use decisions *could* be defective in ways making them void ab initio after LUPA, the City's unwitting approval of the State's noncompliant application would be voidable, not void. *South Tacoma* provided examples of cases in which the Court has articulated why a government's mere violation of its statutes does not make its action void:

> In *Wendel* [*v. Spokane County*, 27 Wash. 121, 123-24, 67 P. 576 (1902)], this court held that a municipal corporation is liable for—and thus bound by—only those actions it had the general authority to perform. Over the years, we have repeatedly upheld this distinction, maintaining that a government action is truly ultra vires only if the agency was without authority to perform the action. *Bd. of Regents v. City of Seattle*, 108 Wn.2d 545, 552, 741 P.2d 11 (1987) ("An act of an officer which is within his realm of power, albeit imprudent or violative of a statutory directive, is not ultra vires."); *Haslund v. City of Seattle*, 86 Wn.2d 607, 622, 547 P.2d 1221 (1976) ("An ultra vires act is one performed without any authority to act on the subject."); *Finch v. Matthews*, 74 Wn.2d 161, 172, 443 P.2d 833 (1968) (stating that an entity is bound by "acts which are within the scope of the broad governmental powers conferred, granted or delegated, but which powers have been exercised in an irregular manner or through unauthorized procedural means").

6

169 Wn.2d 118 at 122-23. *See accord Bilanko*, 185 Wn.2d at 450-51 ("Actions that fail to comply with statutory requirements are generally not void unless the legislature has authorized such a penalty."). Approving a boundary line adjustment is an action the City had the power to perform. By not requiring the signature of Mr. Berschauer on the application, the City merely violated a directive of the municipal code (unwittingly, since Mr. Berschauer's title was not yet a matter of record). The boundary line adjustment was voidable if timely challenged, but not void.

LUPA's 21-day statute of limitations applied to Mr. Berschauer's challenge to the boundary line adjustment.

### *Mr. Berschauer's claim was time-barred under LUPA*

As a fall back argument, Mr. Berschauer points out that "[e]ven if *Habitat Watch* applies, the court in that case noted that the LUPA limitations period does not begin to run until a land use decision is issued," and "here, the boundary line adjustment was never actually approved . . . because it did not comply with the requirement of [former] OMC 17.30.030(5) that the map bear the acknowledged signature of every person with an interest in the property." Br. of Appellant at 10.

Consistent with LUPA's objective of providing uniform appeal procedures and consistent and predictable judicial review, it defines when government action is a "land

use decision," including when a decision is final. *Durland v. San Juan County*, 182 Wn.2d 55, 65, 340 P.3d 191 (2014) (county's definition of "final" determination was irrelevant; LUPA's definition of "land use decision" controls). A land use decision is final under LUPA when any administrative appeal available under the applicable code has been exhausted. *Id.* at 64-65. "This comports with the plain reading of the statute, which requires that the 'final determination' come from the 'officer with the highest level of authority . . . , including those with authority to hear appeals." *Id.* at 65 (alteration in original) (quoting RCW 36.70C.020(2)); a*nd see Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 452-53, 54 P.3d 1194 (2002), 63 P.3d 764 (2003) (finality turned on whether the municipal decision reached the merits and terminated a permit process; once the city determined the permit should issue, "that was the end of the controversy. Samuel's received the relief it had requested. No additional issues remained."). The City's approval of the boundary line adjustment was final for purposes of its being a "land use decision" under LUPA.

LUPA also dictates when a decision is "issued." Under RCW 36.70C.040(4)(a), a land use decision that is not an ordinance or resolution resolving a quasi-judicial matter is considered issued on the third day after it is mailed, or on the date on which the local jurisdiction provides notice that a written decision is publicly available. If that date does

8

not apply, the decision is considered issued on the date it is entered into the public record. RCW 36.70C.040(4)(c). The record on appeal does not indicate whether approval of the boundary line adjustment was mailed or notice given, but does establish an outside issuance date of December 21, 2011, the date it was recorded.

Finally, Mr. Berschauer argues that *Habitat Watch* ran the limitation period from the time Habitat Watch became aware it had the basis for a challenge, and he did not become aware he had the basis for a challenge until the Thurston County Superior Court entered its November 20, 2015 order; he filed his action within 21 days thereafter. (Mr. Berschauer does not explain why the State and City should have known earlier that his signature was required on the application, but he should not.) But *Habitat Watch* ran the limitations period from the date when Habitat Watch received notice because the Court found that the applicable statutory issuance date was that provided by RCW 36.70C.040(4)(a) ("[t]hree days after . . . *the local jurisdiction provides notice* that a written decision is publicly available" (emphasis added)). Here, the applicable statutory issuance date was December 21, 2011, as provided by RCW 36.70C.040(4)(c). A plaintiff need not be aware of a land use decision for the 21-day period to run. *Applewood Estates Homeowners Ass'n v. City of Richland*, 166 Wn. App. 161, 168-69, 269 P.3d 388 (2012) (citing *Samuel's Furniture*, 147 Wn.2d at 462).

9

The trial court properly dismissed Mr. Berschauer's claim for his failure to meet LUPA's 21-day deadline.[4]

### *Attorney fees on appeal*

The City and State request an award of attorney fees and costs under RCW 4.84.370 should they prevail on appeal. Mr. Berschauer asks us to deny a fee award because the City and State (1) prevailed on only procedural grounds and (2) failed to comply with the requirements of RAP 18.1(b).

In *Durland*, our Supreme Court resolved a split of authority in this court over whether a prevailing party is entitled to an award of fees under RCW 4.84.370 if the courts do not reach the merits of the land use decision. Observing differences between subsections (1) and (2) of the statute, the Court held that a prevailing party *other than* "the county, city, or town whose decision is on appeal" is entitled to an award of fees

---

[4] The City argues that we could also affirm the trial court on the basis that Mr. Berschauer had an alternative remedy, since a final judgment on his adverse possession claim would give him record title, on the basis of which he could seek a boundary line adjustment of his own. "Ordinarily, where a plaintiff has another adequate remedy, he or she should not proceed by way of a declaratory judgment action." *Wagers v. Goodwin*, 92 Wn. App. 876, 880, 964 P.2d 1214 (1998). While CR 57 authorizes a trial court to enter a declaratory judgment even though another remedy is available, "[t]he granting of declaratory relief is discretionary" with the trial court. *Ronken v. Bd. of County Comm'rs of Snohomish County*, 89 Wn.2d 304, 310, 572 P.2d 1 (1977).

The fact that Mr. Berschauer did not need declaratory relief is arguably a simpler and more compelling basis for affirming the trial court. Since the focus in the trial court was almost entirely on the statute of limitations with only fleeting mention of Mr. Berschauer's remedial options, we decide the appeal on that basis.

10

when it prevails on any issue, jurisdictional or otherwise. *Durland*, 182 Wn.2d at 78 (construing RCW 4.84.370(1)). RCW 4.84.370(2) authorizes an award of fees to the entity that made the challenged land use decision "if its decision is 'upheld' in two courts," however, which the Court held implies prevailing on the merits. *Id.* Here, then, the City is not entitled to an award of fees on appeal, while the State is.

RAP 18.1(b) requires a party who requests reasonable attorney fees or expenses on appeal to "devote a section of its opening brief to the request for the fees or expenses." The requirement has been held to be mandatory. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). The State has not segregated its request for attorney fees from the rest of its brief with a heading or flagged it by formatting, but it has devoted a free-standing paragraph of its opening brief to the request, identifying RCW 4.84.370 as authority and arguing why it applies.

No reported decision holds just how "separate" the "separate section [of] the brief" must be to comply with RAP 18.1(b). *Wilson Court*, 134 Wn.2d at 710 n.4. A clearer demarcation from the remainder of the brief would have been prudent, but the State's brief satisfies the purpose for requiring a separate section, which is to require argument and citation to authority sufficient "to advise us of the appropriate grounds for an award." *Id.* Decisions denying fees under RAP 18.1(b) have emphasized a party's failure to comply with this substantive aspect of the "section" requirement. *E.g., Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 671, 63 P.3d 125 (2003) (fees denied

11

No. 34970-5-III
*Berschauer v. Dep't Enter. Servs., et al.*

where "[n]one of the briefs mentioned attorney fees"); *Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*, 138 Wn. App. 443, 462, 158 P.3d 1183 (2007) (fees denied where requested in the last sentence of the brief, but without any citation to authority or argument); *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704, 915 P.2d 1146 (1996) (fees requested on appeal "without any argument or citation to authority"); *Austin v. U.S. Bank of Wash.*, 73 Wn. App. 293, 313, 869 P.2d 404 (1994) (parties "have made no argument and cited no authority to support their request for fees").

We find the State's request compliant with RAP 18.1(b). We award it reasonable fees and costs on appeal subject to its compliance with RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, A.C.J.

12