**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

2013 APR -1 AM 8:38
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

NEAL COY, )
                             )
                  Appellant, )    DIVISION ONE
                             )
                  v. )    No. 67737-3-I
                             )
CITY OF DUVALL, )    PUBLISHED OPINION
                             )
               Respondent. )    FILED: April 1, 2013
_____)

DWYER, J. — Neal Coy appeals from the trial court's summary judgment dismissal of his claim against the City of Duvall (the City). Coy contends that, although the City ultimately approved his preliminary plat application, it acted in an arbitrary and capricious manner during the application process. Pursuant solely to the "final decision" prong of RCW 64.40.020(1), Coy seeks an award of money damages for claimed injuries resulting from the City's purportedly arbitrary and capricious conduct. Because the statute provides no cause of action in such circumstances, we affirm the trial court's dismissal of Coy's claim.

I

In May 2006, Coy submitted an application to the City for preliminary plat approval of a 32-unit residential subdivision on a 4.58-acre property. In his application, Coy proposed filling the entire on-site wetland. The City's outside consultant peer reviewer, an ecologist at The Watershed Company, thereafter

performed two site visits of the property to determine whether Coy's proposal was consistent with the City's code. He determined that Coy's proposed mitigation plan was deficient and concluded that, because the wetland "serve[d] several functions," it "appear[ed] that the code would not allow alteration of this wetland."

On June 29, 2006, city planner Lara Thomas wrote to Coy's consultant, David Evans & Associates, Inc. (Evans), stating that the City's wetland peer review process had been completed and that Coy's wetland fill request did not meet the criteria set forth in the City's code. On October 13, 2006, after receiving an extension of the period of time allowed for responding to the City's letter, Evans suggested to Doreen Booth, the City's planning director, that the City's response to the proposal was arbitrary and capricious and "constitute[d] a denial of rights afforded to others in the recent past." Evans maintained that the City's code allowed for the wetland fill proposed by Coy. On December 11, 2006, Booth informed Evans by letter that the City's planning staff could not "approve, or recommend approving, the filling of the wetland under the Sensitive Areas Regulations [Coy's] project [was] vested in."

In January 2007, Evans and the City explored the possibility of processing Coy's application under the new City code, rather than the code in which the application had vested, and Coy submitted a wetland analysis based upon the new code. Ultimately, however, in May 2007, Coy decided not to pursue permit approval pursuant to the City's new code; instead, he decided to remain vested in the prior code.

Then, in October, Coy's attorney wrote to the City, requesting "the City's prompt and immediate action to confirm that wetland alteration with off-site mitigation is authorized for this preliminary plat application." The City's outside counsel, Amy Pearsall, responded, maintaining that the City was not "prepared at this time to say that" Coy's proposal was consistent with the City's code. However, Pearsall proposed a compromise whereby the City would review a proposal consistent with Coy's interpretation of the code if Coy could submit appropriate documentation demonstrating code compliance.

Following Coy's submission of this documentation, the City's outside consultant determined on July 14, 2008, that Coy had met the requirements for filling the wetland. However, an appropriate site for off-site mitigation could not be located; thus, the City allowed Coy to perform off-site mitigation by contributing to the Snohomish Basin Mitigation Bank. The hearing examiner approved Coy's preliminary plat application on December 23, 2008.

On January 22, 2009, Coy sued the City pursuant to RCW 64.40.020(1), which provides permit applicants with a cause of action for damages "to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law." Coy alleged that the City had both (1) failed to comply with the statutorily-mandated time limit for processing the permit application and (2) acted in an arbitrary and capricious manner during the application process. The City moved for partial summary judgment, seeking dismissal of Coy's claim for damages resulting from the alleged arbitrary and capricious conduct. On September 9,

2011, the trial court granted the City's motion, dismissing that claim for relief. Coy thereafter stipulated to the dismissal of his claim asserting that the City had failed to comply with the application processing time limit. Thus, the trial court entered an order dismissing that remaining claim. The trial court thereafter granted the City's motion for an award of attorney fees pursuant to RCW 64.40.020(2).[1]

Coy appeals from the trial court's dismissal of his claim for relief from the City's alleged arbitrary and capricious conduct.

II

Coy contends that he is entitled to delay damages due to the City's purportedly arbitrary and capricious conduct during the application process, notwithstanding the fact that his permit application was ultimately approved. However, as we have recently held, the "final decision" prong of RCW 64.40.020(1), pursuant to which Coy seeks relief, provides only for damages resulting from an agency's "final decision"—*not* from its conduct occurring prior to that decision. Thus, Coy did not state a viable cause of action pursuant to that statutory provision, and the trial court did not err by dismissing the claim.

RCW 64.40.020(1) grants to property owners who apply for land use permits a cause of action (1) "for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority" or (2) for damages to obtain "relief from a failure to act within time limits established by

---

[1] "The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees."

- 4 -

law." Such a cause of action arises only where there is an "act" by the agency, defined by statute as either (1) "a final decision by an agency which places requirements, limitations, or conditions upon the use of real property in excess of those allowed by applicable regulations" or (2) "the failure of an agency to act within time limits established by law in response to a property owner's application for a permit." RCW 64.40.010(6). The statute further provides that the recoverable "damages" are the "reasonable expenses and losses . . . incurred between the time a cause of action arises and the time a holder of an interest in real property is granted relief as provided in RCW 64.40.020." RCW 64.40.010(4). Thus, the statute allows a permit applicant to recover damages in two circumstances—when those damages result from an agency's "final decision" and when the damages are caused by an agency's failure to act within statutorily-prescribed time limits.

Here, Coy asserts that the City acted in an arbitrary and capricious manner by determining that Coy's proposal to fill the wetland was inconsistent with the City's code and, thus, that its approval could not be recommended by City planning staff. Coy contends that the City's conduct was arbitrary and capricious because, he asserts, the City had previously approved other such wetland fills under the same code language. Thus, Coy sought damages to obtain relief from an allegedly arbitrary and capricious "act" of the City—*not* from an alleged failure of the City to act.[2] See RCW 64.40.010(6). Moreover, Coy

_____

[2] Although Coy's complaint alleged that the City had both acted in an arbitrary and capricious manner and failed to act on his application within the statutorily-prescribed time limit,

- 5 -

does not contend that the hearing examiner's ultimate approval of his preliminary plat application was itself arbitrary and capricious. Rather, he asserts that the hearing examiner's decision—the "final decision" contemplated by RCW 64.40.020(1)—was the result of an "arbitrary process."

However, as we recently decided in Birnbaum v. Pierce County, 167 Wn. App. 728, 274 P.3d 1070 (2012), the "final decision" prong of RCW 64.40.020(1) does not provide a cause of action in such circumstances. There, Pierce County approved Birnbaum's conditional use permit application five years after its submission. Birnbaum, 167 Wn. App. at 730-31. Thirty days after the approval of her permit application, Birnbaum sued Pierce County pursuant to RCW 64.40.020(1), alleging that the County had both exceeded the statutorily-prescribed time limit for action on her application and made arbitrary and capricious requests for additional information prior to approving that application. Birnbaum, 167 Wn. App. at 731-32. The trial court dismissed Birnbaum's action pursuant to CR 12(b)(6), and we affirmed. Birnbaum, 167 Wn. App. at 731-37.

As relevant here, we determined that Birnbaum had not "stated a claim for damages based on arbitrary and capricious actions or delays under the final decision prong of the statute." Birnbaum, 167 Wn. App. at 735-37. We noted that "Birnbaum's complaint [did] not allege that the final 2010 permit approval place[d] requirements, limitations, or conditions upon her real property that gave

---

Coy stipulated to the dismissal of his claim based upon the City's alleged noncompliance with the application processing time limit. He appeals only from the trial court's dismissal of his claim for relief from the City's alleged arbitrary and capricious conduct. Thus, only the "final decision" prong of RCW 64.40.020(1) is at issue here.

- 6 -

rise to her damages"—thus, the permit approval itself was not the "act" for which Birnbaum sought damages. Birnbaum, 167 Wn. App. at 735. Rather, Birnbaum sought "damages for costs and delays that occurred while the County processed the application, *before the permit issued.*" Birnbaum, 167 Wn. App. at 735. We held that, pursuant to its plain meaning, the statutory definition of damages set forth in RCW 64.40.010(4) "authorizes damages only for expenses and losses that are incurred *after* a cause of action under the statute arises." Birnbaum, 167 Wn. App. at 735-36. Thus, the damages alleged by Birnbaum, which were incurred prior to the final decision giving rise to a cause of action, were not recoverable. Birnbaum, 167 Wn. App. at 736. We rejected Birnbaum's assertion that "a claim for arbitrary delay occurring prior to a final decision . . . may be brought once the permit decision is final." Birnbaum, 167 Wn. App. at 736. Rather, we held:

> Under the final decision prong, the final decision is the act which triggers the cause of action. The definition of "damages" limits recovery to those damages that occur *after* the cause of action accrues. Simply put, the statute does not contemplate damages—for delay or otherwise—under the final decision prong that occurred *prior* to the final decision.

Birnbaum, 167 Wn. App. at 737.

Similarly, here, Coy seeks damages for delays resulting from the City's allegedly arbitrary conduct *prior to* the City's final decision—in this case, the hearing examiner's ultimate approval of Coy's preliminary plat application. Coy *does not* allege that the hearing examiner's approval of the permit application "places requirements, limitations, or conditions" upon Coy's use of his property

- 7 -

"in excess of those allowed by applicable regulations." RCW 64.40.010(6). Thus, the conduct at issue—from which Coy contends his alleged damages flow—is the City's conduct during the application process, not the hearing examiner's final decision approving the application. But, as Birnbaum makes clear, damages resulting from such conduct are not recoverable pursuant to chapter 64.40 RCW. Rather, damages must result from either a final decision (which Coy does not challenge) or a failure by the agency to act within the statutorily-prescribed time limit (which Coy no longer alleges). RCW 64.40.010(4). Just as we stated in Birnbaum, "the statute does not contemplate damages—for delay or otherwise—under the final decision prong that occurred prior to the final decision." 167 Wn. App. at 737.

Pursuant to RCW 64.40.020, where a permit applicant challenges an act of an agency—rather than the agency's failure to act—the applicant's damages must flow from the agency's final decision. Because, here, Coy challenges the agency's conduct prior to the final decision, he has not stated a viable claim for relief pursuant to that statute. Accordingly, the trial court properly dismissed his claim.

III

Coy additionally contends that the trial court erred by granting an award of attorney fees to the City. We disagree.

Coy first asserts that the trial court's grant of an award of attorney fees to the City was improper because, he contends, the City prevailed on "jurisdictional" grounds rather than "on the merits" of the claim. However, RCW 64.40.020(2),

which provides for an award of attorney fees to the prevailing party in an action brought pursuant to that chapter, does not require that a party prevail on any particular ground. Nevertheless, Coy contends that RCW 4.84.370 is a "similar, almost parallel, statute" and that, pursuant to that statute, Washington courts have determined that an award of fees is precluded where a party does not prevail on the merits of a claim. But that statutory language—which provides that "the county, city, or town whose decision is on appeal is considered a prevailing party *if its decision is upheld* at superior court and on appeal," RCW 4.84.370(2) (emphasis added)—bears little resemblance to the language of RCW 64.40.020(2). It does not inform our decision. Under the plain language of the applicable statutory provision, the trial court had the discretion to award fees to the prevailing party, regardless of the basis for its victory.

Coy additionally asserts that, even if the grant of an award of fees was proper, the trial court abused its discretion in determining the amount of that award. Specifically, he asserts that, "considering the City prevailed on jurisdictional grounds and not the merits, the number of hours spent on this case were extraordinary." However, Coy fails to note that the City addressed "the merits" of the arbitrary and capricious claim in its motion for partial summary judgment, even though the trial court dismissed that claim on other bases. Moreover, Coy does not address the fact that the City prevailed on his claim regarding the timeliness of the application process; although Coy eventually stipulated to the dismissal of that claim, he did not do so until after a motion for partial summary judgment on that issue had been submitted to the trial court.

- 9 -

"The amount of a fee award is discretionary, and will be overturned only for manifest abuse." <u>Boeing Co. v. Sierracin Corp.</u>, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). The trial court did not abuse its discretion in either determining to make an award of fees or in determining the amount of the award it entered.

IV

Finally, the City requests an award of attorney fees on appeal pursuant to RCW 64.40.020(2). The City is the prevailing party on appeal. Accordingly, upon proper application, our commissioner will enter an appropriate order awarding appellate attorney fees to the City.

Affirmed.

We concur:

SCHINDLER, J. (concurring) — I concur in the result but write separately because I would also affirm on the grounds that Coy failed to exhaust all administrative remedies before filing his lawsuit against the City of Duvall alleging a cause of action under chapter 64.40 RCW, and I disagree with the mischaracterization of Callfas v. Department of Construction and Land Use of the City of Seattle, 129 Wn. App. 579, 120 P.3d 110 (2005), in Birnbaum v. Pierce County, 167 Wn. App. 728, 274 P.3d 1070 (2012).

The exhaustion of all administrative remedies is a statutory condition precedent to asserting a cause of action under chapter 64.40 RCW. RCW 64.40.030 states: "Any action to assert claims under the provisions of this chapter shall be commenced only within thirty days after all administrative remedies have been exhausted."[1]

Coy claims he "diligently pursued the legitimate remedies available." But contrary to his assertion, the undisputed record shows that Coy was aware of, but chose not to pursue, all administrative remedies.

On May 11, 2006, David Evans & Associates (Evans) submitted a preliminary plat application to subdivide the 4.58 acres of property owned by Coy into 32 lots for single family homes. The property contains a wetland. The preliminary plat application proposed filling "the entire on-site wetland area and provid[ing] fee in-lieu mitigation to the City of Duvall." In support of the proposal, Evans submitted a "Sensitive Areas Report" prepared by The Jay Group, Inc.

The City retained The Watershed Company to analyze whether the proposal complied with the City of Duvall's "Sensitive Area Regulations." Ecologist Hugh Mortensen determined that the wetland was larger than represented in the proposal,

_____

[1] (Emphasis added.)

- 11 -

and is "an emergent wetland in a rapidly developing watershed [that] has both the potential and the opportunity to improve water quality." Mortensen concluded the Duvall City code "would not allow alteration of this wetland, since it does serve several functions." Mortensen also concluded the proposal did not comply with the requirement to consider practical or feasible alternatives that would result in less environmental impact, and did not provide an analysis of mitigation sequencing.

> The proposal is to fill the entire on-site wetland area and provide fee in-lieu mitigation to the City of Duvall. Typically, since mitigation has been shown to have a historically low success rate, both in Duvall and in the broader region, it is common that agencies allow it only as a last resort. One of the key steps in preparing or evaluating a wetland modification proposal is to demonstrate that there is no practicable or feasible alternative development proposal that results in less impact to the wetland and its buffer. The proposal should include an analysis of mitigation sequencing and an evaluation of how the project has been designed to avoid impacts to the wetland or buffer and to minimize any impacts that are determined to be unavoidable. In evaluating the proposed design, it would appear that there are many efforts that could be taken to avoid wetland fill, not the least of which would be a redesign of the project to include fewer lots or cluster the allowed density on the non-sensitive area portion of the site.

On June 29, the City notified Coy that the proposal to fill the wetland did not meet the current code requirements and Coy could either revise the proposed plat to reduce density, or resubmit the application after the new Sensitive Area Regulations were adopted.

> The City of Duvall has completed the wetland peer review process. The City's wetland consultant has determined that there is more wetland and buffer on site than the Sensitive Areas Report prepared by the Jay Group dated April 7, 2006 shows. The City has determined based on peer review that the wetland fill request does not meet the criteria in [former] DMC [(Duvall Municipal Code)] 14.42.300A [(2005)]. Under existing regulation the project will be subject to minimal fill in accordance with [former] DMC 14.42.320 [(2005)], Wetland - Permitted Alterations. As the applicant you have two choices revise your plans and density calculations

accordingly or wait and resubmit your application under the new Sensitive Area Regulations that are anticipated to be adopted in September of this year.

Jack Molver of Evans & Associates sent Coy a draft letter in response to the City for his review, and strongly urged Coy to not pursue administrative remedies, including a variance or reasonable use exception.

> Here is a draft for your consideration.
> I think that it is clear that the city is making an arbitrary call. The code clearly makes provisions for the fill.
> Not complying with use of the DRC seems to be a violation of the code. [Former] DMC 14.02.030 [(2005)] states that one duty of the Planning Director is to manage the DRC.[2]
> I do not believe that we want to go into the appeal, variance or reasonable use provisions discussed in [former DMCs] 14.42.060, 14.42.070 and 14.42.080 [(2005)] because we must stand firm in our believe [sic] that what we are proposing to do is permitted outright.[3]
> If so, there is nothing to seek a variance from.
> The Reasonable Use route is risky in that the [hearing examiner] must rule that all reasonable use is denied.[4] That is clearly not the case.
> Please give me your comments.

In the letter dated October 13 from Molver to City Planning Director Doreen Booth, Molver claims that the proposal to fill the wetland was allowed by the code, and asserts the City's position is "arbitrary and capricious, and constitute[s] a denial of rights afforded to others in the recent past." Molver requests the Duvall City Development Review Committee (DRC) review the "wetland issues associated with this project."

In response to the October 13 letter, Planning Director Booth cites the City code provisions and reiterates that the City "cannot approve, or recommend approving, the filling of the wetland under the Sensitive Areas Regulations your project is vested in."

---

[2] (Emphasis in original.)
[3] (Emphasis added.)
[4] (Emphasis in original.)

Booth pointed out that the DRC did not hear appeals, and Coy could appeal to the hearing examiner.

> It is a planning director decision re: code interpretation. According to our city attorney, projects are not vested in process, and an appeal of my interpretation would be to the hearing examiner in accordance with [former] DMC 14.08.010.C [(2005)]. Please call me . . . if you have any questions.

After receipt of the response from Booth, Molver again advised Coy against filing an appeal.[5] Coy did not appeal the City's interpretation of the code or seek a variance or reasonable use exception. Nonetheless, Coy claims he pursued administrative remedies by requesting review by the DRC, and no other administrative remedies were available. Coy misrepresents the function of the DRC, and the record shows there were other administrative remedies that he did not pursue.

The DRC is an advisory board managed by the Planning Director. The DRC is not an appellate review body to which the director's code interpretation decision may be appealed. Former DMC 14.02.030A(A)(4) (2005); former DMC 14.02.080(B) (2005).

Under the code, the hearing examiner is the final decision-maker for issues related to preliminary plats. Former DMC 14.08.010(C); former DMC 14.42.070. The code also expressly provides for an appeal to the hearing examiner of an interim decision concerning Sensitive Area Regulations. Former DMC 14.42.070 states:

> **14.42.070 Appeals.**
> A. Any decision to require a special sensitive area study pursuant to this chapter may be appealed by the applicant to the hearing examiner. The fee and costs, procedural and appellate provisions established in this code for variances shall apply.
> B. Any decision to approve, condition or deny a development proposal based on the requirements of the sensitive area regulation may

---

[5] In 2007, Coy submitted a wetland analysis under the City's new Sensitive Area Regulations. However, based on the impact of the new drainage regulations, Coy abandoned that approach.

be required in conjunction with and according to the review procedures for the permit or approval involved.

      C. Any decision authorized by the sensitive area regulations where no review process exist for the permit or approval involved beyond the development review committee (DRC), may be appealed by an aggrieved party to the hearing examiner pursuant to this title.

See also former DMC 14.42.060 (reasonable use exception); former DMC 14.42.080 (variances).

Coy does not assert that he attempted to appeal the City's interpretation of the Sensitive Area Regulations, nor does he address why he did not have to exhaust other administrative remedies. For instance, the City code clearly provides for the issuance of a variance where, due to the special circumstances applicable to the property, "the strict application of the sensitive area regulations would deprive the subject property of rights and privileges enjoyed by other properties in the vicinity and in the same zone." Former DMC 14.42.080(B)(1).

Because the record shows that Coy did not exhaust all administrative remedies, I would also affirm on this ground.

I also write separately because I disagree with the footnote in Birnbaum rejecting a statement in Callfas as "not reconcilable with the statutory definition of 'damages' " in RCW 64.40.020(1). Birnbaum, 167 Wn. App. at 736, n.2. The footnote in Birnbaum states:

> Callfas stated, "Indeed, a permit applicant like the Callfases would have a claim under chapter 64.40 RCW for delay damages, as we noted above, without a writ once the tardy permit was issued." Callfas, 129 Wn. App. at 597. This statement is not reconcilable with the statutory definition of "damages," which that opinion had no occasion to analyze. We respectfully reject it.

Birnbaum, 167 Wn. App. at 736, n.2.

The statement in Callfas refers to the discussion of the supreme court's decision in Mission Springs, Inc. v. City of Spokane, 134 Wn.2d 947, 954 P.2d 250 (1998), and is not contrary to the definition in RCW 64.40.020(1).  In addressing Mission Springs, the opinion clearly states that the developer "filed his action under chapter 64.40 RCW well within 30 days of the City's 'act' of voting to delay the permit to which he was entitled." Callfas, 129 Wn. App. at 594.