# NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL DURLAND, KATHLEEN FENNELL, and DEER HARBOR BOATWORKS, | ) ) ) ) | No. 89293-8 (Ct. App. # 68453-1-I) (Skagit County Superior Ct. # 112024809) |
| Petitioners, | ) ) | Consolidated with |
| v. | ) ) ) | No. 89745-0 (Ct. App. # 69134-1-I) |
| SAN JUAN COUNTY, WES HEINMILLER, and ALAN STAMEISEN, | ) ) ) | (San Juan County Superior Ct. # 122050474) |
| Respondents. | ) ) ) | En Banc

Filed DEC 1 1 2014 |

WIGGINS, J.—In this consolidated case, petitioners brought an untimely challenge to San Juan County's issuance of a garage-addition building permit. Petitioners did not receive notice of the permit application and grant until the administrative appeals period had expired. Thus, petitioners claim that our court's interpretation of the Land Use Petition Act (LUPA), chapter 36.70C RCW, required them to do the impossible: to appeal a decision without actual or constructive notice of it. While this result may seem harsh and unfair, to grant relief on these facts would be contrary to the statutory scheme enacted by the legislature as well as our prior holdings. Indeed, we have acknowledged a strong public policy supporting administrative deadlines and have further explained that "[l]eaving land use

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

decisions open to reconsideration long after the decisions are finalized places property owners in a precarious position and undermines the Legislature's intent to provide expedited appeal procedures in a consistent, predictable and timely manner." *Chelan County v. Nykreim*, 146 Wn.2d 904, 933, 52 P.3d 1 (2002). This court has faced numerous challenges to statutory time limits for appealing land use decisions and has repeatedly concluded that the rules must provide certainty, predictability, and finality for land owners and the government. Petitioners offer us no mechanism that would permit them to assert their claim under LUPA's statutory framework.[1]

In *Durland* 1 Michael Durland skipped San Juan County's administrative appeals process and filed a land use petition directly in superior court to challenge the issuance of a building permit to his neighbor. The court dismissed the petition, finding that there was no "land use decision" under LUPA. The Court of Appeals agreed,[2] and we affirm. We hold that petitioners are required to exhaust available administrative remedies in order to obtain a land use decision. We also hold that there are no equitable exceptions to the exhaustion requirement.[3] The plain

---

[1] We do not address the possibility of a constitutional writ because Durland has not raised the issue. RAP 13.7(b) (this court generally only reviews issues raised by the parties in the petition and answer). Likewise, because Durland did not raise equitable tolling in his briefs or in his petition for review, we do not address whether equitable tolling might have permitted Durland to assert his claim.

[2] *Durland v. San Juan County*, 175 Wn. App. 316, 305 P.3d 246 (2013).

[3] Because there was no land use decision and Durland failed to exhaust his administrative remedies, we need not reach the superior court's third basis for dismissing Durland's petition: that Durland failed to comply with LUPA's 21-day time bar.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

language of LUPA as set forth by the legislature and as interpreted by our court compels this result.

In *Durland* 2 Michael Durland filed an untimely appeal with the San Juan County hearing examiner, who dismissed the appeal. Durland then filed a complaint and land use petition in superior court challenging the dismissal as a violation of his constitutional right to due process. U.S. CONST. amend. XIV, § 1, CONST. art. I, § 3. We hold that there is no violation of due process because Durland has no constitutionally protected property interest in the denial of his neighbor's permit.

Last, we affirm the award of attorney fees to Heinmiller in both cases and award Heinmiller fees for this appeal. Under the plain language of RCW 4.84.370(1), a private party who "prevail[s]" or "substantially prevail[s]" may obtain fees. The statute does not limit fee awards to parties who prevail on the merits.

## FACTS

On August 8, 2011, respondents Wesley Heinmiller and Alan Stameisen (collectively Heinmiller) applied to San Juan County for a building permit to add a second story to their garage. On November 1, 2011, San Juan County granted the permit. Petitioners Michael Durland, Kathleen Fennel, and Deer Harbor Boatworks (collectively Durland) are neighboring property owners who claim that the garage-addition permit adversely impacts their views of the water and diminishes their ability to enjoy the shoreline.

The San Juan County Code (SJCC) does not require public notice when issuing building permits, and petitioners were unaware that the permit had been

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

issued until December 5, 2011, 34 days after the permit was issued.[4] By that time, the deadline for filing an administrative appeal under the county code had passed. SJCC 18.80.140(D)(1) (administrative appeal of building permit must be filed within 21 days of issuance of permit). Nonetheless, on December 19, 2011, Durland filed two actions, a LUPA petition in Skagit County Superior Court (*Durland* 1) and an administrative appeal to the San Juan County hearing examiner (*Durland* 2).

In *Durland* 1, Durland challenged the validity of the building permit; he asserted that the permit authorized construction in violation of county shoreline and zoning requirements, and he sought a judicial determination that the building permit was void. The superior court dismissed the LUPA petition for several reasons: Durland had not exhausted his administrative remedies, the petition was not filed within LUPA's 21-day appeal period, and there was no land use decision because Durland had not timely appealed to the hearing examiner. The Court of Appeals affirmed. *Durland v. San Juan County*, 175 Wn. App. 316, 305 P.3d 246, *review granted*, 179 Wn.2d 1001, 315 P.3d 530 (2013).

In *Durland* 2, Durland also sought reversal of the permit in an administrative appeal to the San Juan County hearing examiner. The hearing examiner dismissed the appeal as untimely. Durland then filed a 42 U.S.C. § 1983 claim with an alternative LUPA claim in San Juan Superior Court to challenge the order of dismissal and the SJCC on grounds that both violated his constitutional right to due

---

[4] Durland learned of the permit through a public records request.

process. Durland argued that the SJCC violated his due process rights because it does not require the county to provide notice of permitting decisions so that neighboring property owners can timely challenge them. The superior court summarily dismissed the LUPA petition and granted respondents' motion for summary judgment on the § 1983 claim. The Court of Appeals affirmed, holding that Durland does not possess a constitutionally protected property interest upon which a due process claim can be based. *Durland v. San Juan County*, noted at 177 Wn. App. 1002, 2013 WL 5503681, at *1.[5] The Court of Appeals in both *Durland* 1 and *Durland* 2 awarded Heinmiller attorney fees under RCW 4.84.370. We granted review of both *Durland* 1 and *Durland* 2 and consolidated the two cases. *Durland*, 179 Wn.2d 1001.

## ANALYSIS

I.      In *Durland* 1, the superior court properly dismissed the LUPA petition

In *Durland* 1, the superior court correctly dismissed the land use petition because Durland did not appeal to the hearing examiner prior to filing his petition. Durland's failure to seek review with the hearing examiner is doubly fatal to his LUPA suit: it meant that no final land use decision had been made, thus depriving the superior court of appellate jurisdiction; and it deprived Durland of standing because he had failed to exhaust his administrative remedies. Durland argues that he was

---

[5] The first appeal under LUPA (Wash. Ct. App., No. 68757-3-I) was dismissed as premature. The second appeal containing Durland's § 1983 claim (Wash. Ct. App., No. 69134-1-I) proceeded on the merits.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not required to appeal to the hearing examiner because he had no notice of the permit until after his appeal window had closed. We have rejected this argument.

A.      *Standard of review*

LUPA governs judicial review of land use decisions. RCW 36.70C.030. Under LUPA, a court may grant relief from a land use decision only if the party seeking relief has shown:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1). This court reviews rulings under RCW 36.70C.130 de novo. *Knight v. City of Yelm*, 173 Wn.2d 325, 336, 267 P.3d 973 (2011).

B.      *There was no land use decision in* Durland *1*

The superior court did not have jurisdiction to hear this appeal because there was no land use decision. The legislature enacted LUPA in 1995 to replace the writ of certiorari as the exclusive means of appealing a local land use decision. RCW

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

36.70C.030. LUPA's purpose is to ensure uniform and expedited judicial review of land use decisions. RCW 36.70C.010.

A superior court hearing a LUPA petition acts in an appellate capacity and has only the jurisdiction conferred by law. *Knight*, 173 Wn.2d at 337 (citing *Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005)). Under LUPA, the superior court review is limited to actions defined by LUPA as land use decisions. RCW 36.70C.010, .040(1); *Post v. City of Tacoma*, 167 Wn.2d 300, 309, 217 P.3d 1179 (2009). A "land use decision" is defined as

> a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
>
> (a) [a]n application for a project permit . . . .

RCW 36.70C.020(2).

The issuance of a permit may qualify as a final land use decision if there is *not* a way to administratively appeal the permit under the applicable code. *See, e.g.*, *Nykreim*, 146 Wn.2d at 927-29 (permit issuance deemed land use decision because no appeals process in place at the time); *see also Asche v. Bloomquist*, 132 Wn. App. 784, 791, 133 P.3d 475 (2006) (issuance of permit was land use decision because county code did not provide for administrative challenge to building permit). But where the permitting authority creates an administrative review process, a building permit does not become "final" for purposes of LUPA until administrative review concludes. Only then is there a final land use decision that can be the subject of a LUPA petition. *Ferguson v. City of Dayton*, 168 Wn. App. 591, 277 P.3d 705

7

(2012) (no land use decision prior to final determination by planning commission, which was entity with the last word on the permit). This comports with the plain reading of the statute, which requires that the "final determination" come from the "officer with the highest level of authority . . . , including those with authority to hear appeals." RCW 36.70C.020(2).

Here, the San Juan County Department of Community Development and Planning issued the building permit, which was subject to appeal to a hearing examiner. SJCC 18.80.140(B)(11). Thus, only a decision by the hearing examiner qualifies as a land use decision. Because Durland did not appeal to the hearing examiner, the examiner did not issue a final determination, and Durland failed to obtain a land use decision under LUPA. The court properly dismissed the petition.

We reject Durland's argument that San Juan County's decision to issue the permit was a land use decision under LUPA because the SJCC provides that administrative determinations "shall be final" unless appealed. SJCC 18.10.030(C). This SJCC provision does not make the permit issuance a "final determination" for LUPA appeals purposes. *Cf. Ward v. Bd. of Skagit County Comm'rs,* 86 Wn. App. 266, 271, 936 P.2d 42 (1997) (county code categorized hearing examiner's decision as "final decision," but because decision was nonetheless subject to appeal, it did not constitute a land use decision under LUPA). Indeed, in *Samuel's Furniture, Inc. v. Dep't of Ecology,* we rejected an interpretation of "final" that depends on a party's decision to appeal. 147 Wn.2d 440, 453, 54 P.3d 1194, 63 P.3d 764 (2002). We explained that "[a] decision must be either final or interlocutory for appellate

purposes." *Id.* at 452. Defining finality in terms of a party's decision to appeal is unclear because "the decision is final if [a party] decides not to challenge the decision, but nonfinal, although not interlocutory, if it does." *Id.* at 453.

For these reasons, no land use decision had been made at the time Durland filed his LUPA petition. Consequently, the superior court lacked jurisdiction to hear the petition.

## C. There are no equitable exceptions to LUPA's exhaustion requirement

We hold that there are no equitable exceptions to the exhaustion requirement in LUPA; consequently, Durland's failure to exhaust his administrative remedies deprived him of standing to file a LUPA petition. To have standing to file a land use petition, a petitioner must first "exhaust[] his or her administrative remedies to the extent required by law."[6] RCW 36.70C.060(2)(d). Here, Durland filed his LUPA petition with the superior court prior to completing his administrative appeal to the San Juan County hearing examiner. Because he failed to exhaust his administrative remedies, the superior court correctly concluded that he lacked standing to file a land use petition.

Durland argues that there are equitable exceptions to the exhaustion requirement because the statute requires exhaustion only "to the extent required by

---

[6] LUPA's definition of "land use decision" implies that exhaustion of administrative remedies is always required before a superior court may exercise its appellate jurisdiction. RCW 36.70C.020(2); *see also West v. Stahley*, 155 Wn. App. 691, 697, 229 P.3d 943 (2010) ("[t]o obtain a final determination from a local jurisdiction, a LUPA petitioner must necessarily exhaust all available administrative remedies"). Accordingly, no court has ever excused the exhaustion requirement in a LUPA case.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

law." RCW 36.70C.060(2)(d). He argues that this phrase refers to equitable exceptions to the exhaustion requirement and that he falls within an equitable exception either because he had no notice of the permit prior to the administrative appeals deadline or because exhaustion would have been futile. We reject this argument.

"[T]o the extent required by law" refers to statutory exceptions, not equitable exceptions. RCW 36.70C.060(2)(d). We have looked to the exhaustion requirement in the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, to interpret LUPA's exhaustion requirement. *See Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 869, 947 P.2d 1208 (1997). In doing so, we look for similar or identical language. In LUPA, "to the extent required by law" parallels language in the APA that "[a] petitioner for judicial review need not exhaust administrative remedies *to the extent* that this chapter or any other statute *states that exhaustion is not required.*" RCW 34.05.534(2) (emphasis added). This suggests that "to the extent required by law" refers to explicit statutory exceptions to the exhaustion requirement. Notably, the APA also empowers courts to excuse exhaustion if the petitioner shows that remedies would be patently inadequate, exhaustion would be futile, or grave irreparable harm would result from having to exhaust administrative remedies. RCW 34.05.534(3). LUPA contains no similar language, and we have never interpreted "to the extent required by law" to refer to equitable exceptions. It is within the legislature's power to craft statutory exceptions

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

if it so wishes. Our duty is to discern and implement the intent of the legislature. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

We decline to recognize equitable exceptions to LUPA's exhaustion requirement because the exhaustion requirement furthers LUPA's stated purposes of promoting finality, predictability, and efficiency. This is in keeping with our LUPA case law; generally, we have required parties to strictly adhere to procedural requirements that promote LUPA's stated purposes. For example, we require strict compliance with LUPA's bar against untimely or improperly served petitions. In *Habitat Watch v. Skagit County*, we held that LUPA's 21-day appeals window barred a citizens' group's challenge to a construction project, despite the fact that the county mistakenly failed to provide public notice for two public hearings on permit extensions for the project. 155 Wn.2d 397, 406-10, 120 P.3d 56 (2005). We explained that "even illegal decisions must be challenged in a timely, appropriate manner." *Id.* at 407.[7] By contrast, we have found that LUPA's form and content requirements do not directly relate to LUPA's stated purpose. *Knight*, 173 Wn.2d at 336. Accordingly, we require only substantial compliance with the form and content requirements.

---

[7] *See also Nykreim*, 146 Wn.2d at 926 (compliance with 21-day time limit essential for court to acquire jurisdiction); *Samuel's Furniture, Inc.*, 147 Wn.2d at 462 (noting that "LUPA does not require that a party receive individualized notice of a land use decision in order to be subject to the time limits for filing a LUPA petition" and holding that a government agency challenging a local land use decision must file appeal within 21 days); *Brotherton v. Jefferson County*, 160 Wn. App. 699, 703-05, 249 P.3d 666 (2011) ("Because the Brothertons' complaint did not invoke LUPA or comply with the strict 21-day deadline for appealing final land use decisions, the County's decision has become unreviewable.").

*Durland et al. v. San Juan County et al.*
No. 89293-8 consolidated with 89745-0

Here, the exhaustion requirement is essential because it furthers LUPA's policy of efficient and timely review. Indeed, the promotion of these goals is inherent in exhaustion requirements generally. As we have noted, the doctrine of exhaustion

> (1) insure[s] against premature interruption of the administrative process; (2) allow[s] the agency to develop the necessary factual background on which to base a decision; (3) allow[s] exercise of agency expertise in its area; (4) provide[s] a more efficient process; and (5) protect[s] the administrative agency's autonomy by allowing it to correct its own errors and insuring that individuals were not encouraged to ignore its procedures by resorting to the courts.

*S. Hollywood Hills Citizens Ass'n v. King County,* 101 Wn.2d 68, 73-74, 677 P.2d 114 (1984) (citing *McKart v. United States,* 395 U.S. 185, 193-94, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)). Thus, the exhaustion requirement furthers LUPA's stated purpose and there are no equitable exceptions to it. *See also Knight,* 173 Wn.2d at 336 (noting that LUPA's standing requirements, which include exhaustion of administrative remedies (RCW 36.70C.060(1)(d), are jurisdictional) (citing *Nykreim,* 146 Wn.2d at 926)).

Accordingly, we hold that the superior court properly dismissed Durland's petition in *Durland* 1 because there was no land use decision under LUPA and because Durland failed to exhaust his administrative remedies. For those reasons, the legislature has not authorized the courts to review the challenged permit in this case.

II.     In *Durland* 2, the superior court properly granted summary judgment in favor of the county on the § 1983 claim and dismissed the LUPA petition

In *Durland* 2, Durland claims the county violated his constitutional right to due process by failing to provide notice of the permit so that he could timely challenge it

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and by dismissing his administrative appeal as untimely. U.S. CONST. amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). But Durland has not shown that he has a constitutionally protected property interest to support his due process claims. A constitutionally protected property interest exists when a plaintiff demonstrates that he or she possesses a "legitimate claim of entitlement" under the law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Here, the SJCC does not grant adjoining property owners a claim of entitlement in the protection of their views; the code does not require the County to deny a building permit that might impair private views of the water. Thus, Durland's due process claims fail.

## A.   Standard of review

This court reviews summary judgment determinations de novo, engaging in the same inquiry as the trial court. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In addition, the applicability of the constitutional due process guaranty is a question of law subject to de novo review. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003).

## B.   *Protected property interests include all benefits to which there is a legitimate claim of entitlement*

The Civil Rights Act, 42 U.S.C. § 1983, provides a federal cause of action for the deprivation of constitutional rights. To prevail in a § 1983 action alleging deprivation of procedural due process, a plaintiff must prove that the conduct

13

complained of deprived the plaintiff of a cognizable property interest without due process. *See Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 962, 954 P.2d 250 (1998). In other words, the plaintiff must identify a property right, show that the state has deprived him or her of that right, and show that the deprivation occurred without due process. *See id.* Durland's claim fails because he has not identified a cognizable property right.

"Property" under the Fourteenth Amendment encompasses more than tangible physical property. U.S. CONST. amend. XIV; *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). Protected property interests include all benefits to which there is a "'legitimate claim of entitlement'." *Conard v. Univ. of Wash.*, 119 Wn.2d 519, 529, 834 P.2d 17 (1992) (quoting *Roth*, 408 U.S. at 577). In *Roth*, the Supreme Court explained,

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. Constitutionally protected property interests may be created either through (1) contract, (2) common law, or (3) statutes and regulations. *See Conard*, 119 Wn.2d at 529-30. Durland does not claim a property interest created by contract or common law. Therefore, we analyze only whether Durland has a property interest created by statute or regulation.

In *Kentucky Dep't of Corrections v. Thompson*, the Supreme Court explained that statutes creating a liberty interest need not explicitly announce the interest but must contain "mandatory language" giving rise to a claim of entitlement. 490 U.S.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

454, 463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) (prison visitation regulation did not create a protected interest because did not explicitly provide that a visitor *must* be denied a visit if grounds were present or *must* be allowed a visit if grounds were absent).[8] We have applied the "mandatory language" test to determine whether a statute creates a protected property interest. *Conard*, 119 Wn.2d at 529-30. With respect to permits, a property interest arises when there are articulable standards that constrain the decision-making process. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). In other words, a property interest exists if discretion is substantially limited. *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099 (9th Cir. 2010).

In a typical land use case, the question is whether a *permit applicant* has a "property right" in the requested or revoked permit. Courts have found that a property interest exists when an applicant is entitled to a permit or variance having met certain criteria. *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (holding that "specific, mandatory" and "carefully circumscribed" requirements constrained discretion enough to give rise to property interest). Conversely, "a

---

[8] The "mandatory language" test articulated in *Kentucky Dep't of Corrections*, 490 U.S. 454, has since been deemed inapplicable when determining whether prison regulations give rise to a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). But the "mandatory language" test is still applicable in nonprison cases. *See, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (applying "mandatory language" test to find that wife did not have property interest in police enforcement of restraining order); *see also Doyle v. City of Medford*, 606 F.3d 667, 672-73 (9th Cir. 2010) (no protected property interest in postretirement health insurance coverage for employees because statute was not mandatory).

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right." *Thornton v. City of St. Helens,* 425 F.3d 1158, 1164 (9th Cir. 2005).

Less typically, opponents of development sometimes claim a property interest in the denial of a permit. In these cases, courts have applied the same analytic framework. *See Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008); *see also Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1217 & n.4 (10th Cir. 2003) (rejecting distinction between due process claim brought by permit applicant and claim brought by third party); *Hillside Cmty. Church v. Olson*, 58 P.3d 1021, 1028 n.6 (Colo. 2002) (the two situations are "simply opposite sides of the same argument"). But the focus is whether the regulation at issue mandates protection of the third party's interest. Thus, in analyzing Durland's § 1983 claim, we must determine whether the SJCC requires the permitting authority to consider the views of neighboring property owners. The answer is no.

C. *Under the SJCC, Durland does not have a legitimate claim of entitlement to his views of the water*

The SJCC imposes height and size limitations on the construction of residential structures including garages. Durland argues that these limitations create a property interest because they were intended to protect neighbors' views of the water. This claim fails because the SJCC does not contain mandatory language requiring the county to consider neighbors' views of the water before issuing building permits for garage construction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The first step in our analysis is to identify the applicable provisions in the code. The San Juan County Shoreline Master Program (SMP), chapter 18.50 of the SJCC, governs Heinmiller's application for a permit to construct a second-story office and entertainment area above his garage. Specifically, the permit at issue falls under SJCC 18.50.330, which applies to residential developments and appurtenant structures including garages.[9]

Second, we determine whether the applicable provisions are couched in mandatory language giving rise to a legitimate claim of entitlement. Here, Durland's due process claim fails because there is no mandatory language in SJCC 18.50.330 giving rise to a protected property interest. SJCC 18.50.330(B)(15) and .330(E)(2)(a) limit the number and size of accessory structures associated with a single-family residence. Specifically, the code allows two accessory structures—one garage building and one accessory dwelling unit of no more than 1,000 square feet each, or a combination of the two not exceeding 2,000 square feet. Durland claims the garage was more than 1,000 square feet so it was not a lawful accessory structure. Accordingly, a building permit to add to the garage could not be lawfully issued. But nothing in subsections .330(B)(15) or .330(E)(2) suggests that the

---

[9] Indeed, parties appear to agree that the development at issue falls under SJCC 18.50.330. In the land use petition and complaint, Durland argues that the permit authorized development in violation of the height and size limitations imposed by section .330 on accessory structures. *See* SJCC 18.50.330(B) (Regulations—Location and Design), .330(E) (Regulations—Accessory Use).

mandatory size limitations are intended to protect the views of neighboring property owners.

Durland also relies on general height limitations in SJCC 18.50.330(B)(14). But subsection .330(B)(14) does not apply because Heinmiller is constructing a garage addition, which is governed by the more specific and restrictive provisions of subsections .330(B)(15) and .330(E)(2)(a). *See* SJCC 18.50.330(B)(5), .330(E)(2)(a) (setting height limits for garage and accessory buildings), .040(E) ("Where provisions of this SMP conflict, the more restrictive of the provisions applies unless specifically stated otherwise."). And unlike subsection .330(B)(14), subsections .330(B)(15) and .330(E)(2)(a) never mention protection of views.

In any case, the height limits in subsection .330(B)(14) exist to protect public visual access, not private views.[10] Under subsection .330(B)(14), any residential structure that exceeds 35 feet in height shall be permitted only as a conditional use and an applicant must demonstrate that "the structure will not result in significant adverse visual impacts, nor interfere with normal, public, visual access to the water." SJCC 18.50.330(B)(14). "The applicant must also demonstrate that there are compensating factors which make a taller structure desirable *from the standpoint of the public interest*." *Id.* (emphasis added). A later provision in SJCC 18.50.330

---

[10] We are not suggesting that the provision grants any member of the public a property interest in views of the water. As we explained in *Crosby v. Spokane County*, "[T]he interests of the public, including those who are neighbors, are represented by the Board. That representation tends to limit any possible prejudice to neighboring landowners." 137 Wn.2d 296, 310, 971 P.2d 32 (1999) (neighboring landowners did not have interest requiring that they be joined in writ of certiorari proceedings if feasible).

confirms that the County is principally concerned with residential developments that impair public visual access. *See* SJCC 18.50.330(F)(1) (specifically regulating "Public/Visual Access" with regard to residential subdivisions and nonexempt developments). The code does not use the terms "private" and "public" interchangeably.[11] Thus, we conclude that the height limits in subsection .330(B)(14) do not give neighbors a legitimate claim of entitlement in their views of the water.

The Court of Appeals correctly distinguished *Asche v. Bloomquist*, 132 Wn. App. 784, 133 P.3d 475 (2006). In *Asche*, the petitioner filed, in part, a due process claim alleging that he was not given notice when Kitsap County granted a permit to his neighbors to build a structure that obstructed his view of Mount Rainier. *Id.* at 788-89. The Court of Appeals noted that it had to find a protected property interest in the view before it could consider the due process claim. *Id.* at 796. Recognizing that no such interest existed under common law, the court looked to a local zoning ordinance. *Id.* at 797. The court found that the zoning ordinance created a protected property interest in the view because "the plain language of this ordinance requires that buildings more than 28 feet and less than 35 feet high *can be approved only if*

---

[11] The trial court contrasted a view protection provision in SJCC 18.50.140(D) to aid in interpreting subsection .330(B)(14). *See* SJCC 18.50.140(D) ("to limit interference with views from surrounding properties to the shoreline and adjoining waters, development on or over the water shall be constructed only as far seaward as necessary for the intended use"). The court reasoned that the "adverse visual impact" language in subsection .330(B)(14) differs from the specific reference to "views from surrounding properties" in SJCC 18.50.140(D). Thus, Durland cannot imply that "adverse visual impacts" refers to neighboring views. In any case, Durland does not rely on SJCC 18.50.140. And at best, this provision indicates that Heinmiller should construct only as far seaward as is necessary, which he does because this is a second-story garage addition (the only location to build a second-story garage is directly on top of the garage).

*the views of adjacent properties . . . are not impaired." Id.* at 798 (emphasis added). Hence, a property interest existed because the ordinance forbade the construction of buildings that impaired the view of neighboring properties; the language was mandatory with respect to neighboring views.

In sum, when a local code fails to explicitly create a property right—as is the case here—the court determines whether language in the code mandates certain outcomes when all factual predicates are met. Here, the height and size limitations of the SJCC do not create a property interest in the denial of a third-party's building permit. The statutory language does not significantly constrain San Juan County's discretion to issue garage or accessory unit permits that may impact views from neighboring properties. From this, it follows that Durland's procedural due process claim fails. *Thornton,* 425 F.3d 1158 (absence of property right means there can be no violation of procedural due process in the land use context). Thus, we affirm the Court of Appeals' grant of summary judgment on the § 1983 claim. And, for the same reasons, we affirm dismissal of Durland's land use petition, which similarly alleges violation of due process. Durland has no claim under LUPA because he does not have a sufficient property interest to require that notice be given to him.[12]

---

[12] Because Durland lacks a cognizable property interest, we do not reach the issue of whether LUPA's procedural requirements apply to bar a related § 1983 claim.

III.   Affirming the fee awards in *Durland* 1 and *Durland* 2 and granting Heinmiller attorney fees for this appeal

We must also decide whether attorney fees are available under RCW 4.84.370 when a party prevails on jurisdictional grounds.   Under subsection (1) of RCW 4.84.370, a private party who substantially prevails before the governmental unit and in more than one judicial review is entitled to an award of attorney's fees. But under subsection (2), a county, city, or town may be awarded fees if its decision was "upheld at superior court and on appeal." RCW 4.84.370(2). Applying the statute to this case, we hold that Heinmiller, a private party, is entitled to an award of fees in both *Durland* 1 and *Durland* 2.

A.   *Standard of review*

Whether a party is entitled to an award of attorney's fees is a question of law and is reviewed on appeal de novo.   *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 86, 285 P.3d 70, *review denied*, 175 Wn.2d 1015, 287 P.3d 10 (2012).  The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity.  *See Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 79, 272 P.3d 827, *cert. denied*, 133 S. Ct. 199, 184 L. Ed. 2d 39 (2012).

B.   *RCW 3.84.370(1) allows fees for private parties who prevail on procedural or substantive grounds*

RCW 4.84.370 provides,

(1)   Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

(a)    The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and

(b)    The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

(2)    In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

(Alteration in original.)

There is an apparent split in the Court of Appeals on the interpretation of RCW 4.84.370. Division Two has held that parties are not entitled to fees unless the court rules on the merits; no fees are awarded if the court dismisses a LUPA petition as untimely. *Witt v. Port of Olympia,* 126 Wn. App. 752, 759, 109 P.3d 489 (2005) (RCW 4.84.370 requires a party to prevail on the merits); *Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 601, 972 P.2d 470 (1999). Division One has awarded fees to substantially prevailing parties regardless of whether the court reaches the merits. *Prekeges v. King County,* 98 Wn. App. 275, 285, 990 P.2d 405 (1999) (RCW 4.84.370 does not require that a party prevail on the merits).

This split can be reconciled. RCW 4.84.370 is divided into two subsections based on the identity of the parties involved. Under subsection (1), prevailing parties

are entitled to attorney fees only if a county, city, or town makes a permitting decision in their favor and the party is successful in defending that decision in at least two courts. *Habitat Watch*, 155 Wn.2d at 413. Subsection (1) does not require that a party prevail "on the merits." Instead, the statutory language indicates the legislature's intent to allow attorney fees when a party prevails on any issue, jurisdictional or otherwise. The term "prevail" does not connote either a merits decision or a procedural one, but suggests only that a party succeeded in the litigation. *Cf. Blair v. Wash. State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (addressing RCW 4.84.010; holding that "a party prevails when it succeeds on any significant issue which achieves some benefit the party sought"). Moreover, the ordinary meaning of "prevail" does not connote a particular type of success. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1797 (2002) ("prevail" means generally "to gain victory" or "to be . . . successful"). And, the statute allows fees for parties who "substantially" prevail, which suggests that the prevailing party need not prevail on his or her entire claim. *Knight*, 173 Wn.2d at 347. Thus, we hold that under subsection (1), a party must succeed in some manner to "prevail." This includes jurisdictional wins.

Subsection (2) governs specifically when a "county, city, or town" is the party seeking attorney fees. RCW 4.84.370(2). Under this provision, a public entity will receive attorney fees if its decision is "upheld" in two courts, which implies a ruling on the merits. Thus, in accordance with the structure of the statute, we separate subsections (1) and (2). We award fees under subsection (1) to private parties who

prevail on procedural or substantive grounds, but we award fees to the public entity that made the permitting decision only when the public entity succeeds in defending its decision on the merits.

Our case law supports this interpretation of RCW 3.84.370.[13] We affirm the result in *Prekeges* because Division One properly awarded fees to a private party who prevailed on jurisdictional grounds. And we approve Division Two cases to the extent they apply subsection (2) to deny fees to public entities who prevailed on jurisdictional grounds. In other words, we approve the results in *Overhulse, Witt, Northshore,*[14] and *Pullman*[15] but disapprove language in these cases that a city or county is not entitled to fees if it does not "substantially prevail" on the merits. *See, e.g., Brotherton v. Jefferson County*, 160 Wn. App. 699, 705-06, 249 P.3d 666 (2011) (improperly relying on RCW 4.84.370(1) to deny County's request for attorney fees).

The concurrence disagrees with our holding that a party "prevails" under RCW 4.84.370(1) when that party prevails on any issue, whether procedural or substantive, but that under subsection .370(2) a county, city, or town's decision is "upheld" only if the decision is upheld on the merits, not on procedural grounds. The concurrence argues that "we often use the words 'uphold' and 'affirm'

---

[13] The decision of the Court of Appeals, Division One, in *Coy* is the only case that does not fit within this interpretation because it awards a city fees, which should have been denied under subsection (2). *Coy v. City of Duvall*, 174 Wn. App. 272, 298 P.3d 134, *review denied*, 178 Wn.2d 1007, 308 P.3d 642 (2013). We disapprove this part of the *Coy* holding.

[14] *Northshore Investors, LLC v. City of Tacoma*, 174 Wn. App. 678, 700-01, 301 P.3d 1049 (2013).

[15] *Richards v. City of Pullman*, 134 Wn. App. 876, 883-84, 142 P.3d 1121 (2006).

interchangeably, indicating agreement with a lower court's decision." Concurrence at 5. But the legislature did not use the term "affirm"; it used the contrasting terms "substantially prevail[ ]" and "decision is upheld." The use of different terms within the same statute implicates the "basic rule of statutory construction that the legislature intends different terms used within an individual statute to have different meanings." *State v. Tracer*, 173 Wn.2d 708, 718, 272 P.3d 199 (2012).

C. *Heinmiller is a substantially prevailing party*

Here, we grant fees to Heinmiller under RCW 4.84.370(1) because he substantially prevailed. In *Durland* 1, the court dismissed the land use petition and the Court of Appeals affirmed. Thus, Heinmiller succeeded in defending his permit, and we affirm the fee award and grant fees for this appeal.

In *Durland* 2, the court dismissed the § 1983 claim and the LUPA petition. We agree with the Court of Appeals that because Heinmiller was not a defendant to the § 1983 claim, he should not receive fees or costs related to defending against that claim. *Durland*, 2013 WL 5503681, at *4. But he is entitled to fees related to the land use petition. *Cf. Sing v. John L. Scott, Inc.*, 83 Wn. App. 55, 920 P.2d 589 (1996), *rev'd on other grounds*, 134 Wn.2d 24, 948 P.2d 816 (1997) (if law permits attorney fees on one substantive theory but not another, court should award fees only for the hours devoted to pursuing claim where fees are recoverable). Thus, we affirm the Court of Appeals in *Durland* 2 and grant Heinmiller reasonable attorney fees to the extent *Durland* 2 deals with the LUPA claim.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

In *Durland* 1, we affirm the Court of Appeals' dismissal of the LUPA petition because there was no land use decision and because Durland failed to exhaust his administrative remedies. We also affirm the award of attorney fees and award Heinmiller attorney fees for this appeal. *Durland* 1 is remanded for further proceedings consistent with this opinion.

In *Durland* 2, we affirm summary judgment in favor of the county on the § 1983 claim because Durland has no protectable property interest to support his due process claim. In addition, we hold that the superior court did not err in dismissing Durland's land use petition. On the issue of attorney fees, we affirm the Court of Appeals and remand to the trial court to determine the proper amount of attorney fees to be awarded. We also award Heinmiller reasonable attorney fees for proceedings in this court to the extent they were incurred in connection with the land use petition, also to be awarded by the trial court. *Durland* 2 is remanded for further proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_Wiggins, J._

WE CONCUR.

González, J.

Geo McClee, J.

Korsmo, J. P.T.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Durland, et al. v. San Juan County, et al.*

No. 89293-8

STEPHENS, J. (concurring)—I agree with the majority's decision to affirm and to grant Wesley Heinmiller attorney fees, and for that reason, I concur. However, I disagree with the majority's interpretation of RCW 4.84.370.

First, the majority correctly recognizes a split in the Court of Appeals on the interpretation of the statute but suggests a novel approach not advanced by anyone. The Court of Appeals interprets RCW 4.84.370 as being comprehensive, meaning the standard—as interpreted by each division—applies to private and local governments alike. The majority attempts to "reconcile" the inconsistencies between the divisions by splitting the statute such that under subsection (1) private parties *do not* require a ruling on the merits but that under subsection (2) local governments *do require* a ruling on the merits. Majority at 23. However, the majority's attempt to reconcile the conflict between the divisions ignores their very

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

reasoning. None of the divisions have split the statute in this manner, and neither the statutory text nor the divisions' interpretations fit into the majority's model.

Division Two has held that parties—whether private or governmental—are not entitled to attorney fees unless the court rules on the merits. This is evident in *Witt v. Port of Olympia*, where the court said, "[W]e have limited RCW 4.84.370 to require that the 'prevailing' party prevail 'on the merits' in an adversarial proceeding." 126 Wn. App. 752, 758, 109 P.3d 489 (2005) (citing *Overhulse Neigh. Ass'n v. Thurston County*, 94 Wn. App. 593, 601, 972 P.2d 470 (1999)). Referencing the entire statute, the court in *Witt* did not split subsections (1) and (2) when it interpreted the term "prevail" as requiring a ruling on the merits. *Id.* at 759. Further, the *Witt* court reasoned that the legislative intent of the statute "in its entirety" is to "allow attorney fees only to a party who prevails on the merits." *Id.* This legislative intent applies to both local government and private parties indistinguishably.

Division One disagrees with Division Two[1] but has similarly interpreted the standard under RCW 4.84.370 as applicable to both local government and private

_____

[1] Heinmiller argues that Divisions One and Two are no longer split on this issue because Division Two recently held that attorney fees may be awarded where courts dismiss land use appeals on jurisdictional grounds. *See Nickum v. City of Bainbridge Island*, 153 Wn. App. 366, 383-84, 223 P.3d 1172 (2009). Division Two in *Nickum*, however, did not address the conflict that remains from its previous decisions in *Overhulse* and *Witt*, relying instead on Division One's decision in *San Juan Fidalgo*

parties. In *Prekeges v. King County*, the court held that the statute does not require a ruling on the merits. 98 Wn. App. 275, 285, 990 P.2d 405 (1999). For support of this proposition, the court cited its previous decision in *San Juan Fidalgo Holding Co. v. Skagit County*, 87 Wn. App. 703, 714-15, 943 P.2d 341 (1997), where it awarded attorney fees to the respondents who prevailed on procedural grounds, including both Skagit County and aligned private parties. *Prekeges*, 98 Wn. App. at 285.

While the bare facts in *Witt*, *Overhulse*, and *Prekeges* may line up with the majority's attempt to reconcile the split, the courts' reasoning in each case cannot be harmonized. The divisions continue to assert their conflicting interpretations of the statute, as is evident in several unpublished Court of Appeals opinions. *See Toward Responsible Dev. v. City of Black Diamond*, noted at 181 Wn. App. 1030, 2014 WL 2796526 (Division One) (applying the same attorney fee analysis and granting fees to *both* the city and an aligned private party after the Land Use Petition Act (LUPA), chapter 36.70C RCW, petition was dismissed on procedural grounds); *Mangat v. Snohomish County*, noted at 176 Wn. App. 1010, 2013 WL 4734005, at *4-5 (Division One) (granting attorney fees to *both* the county and

_____

*Holding Co. v. Skagit County*, 87 Wn. App. 703, 709, 713-15, 943 P.2d 341 (1997). Thus, Division One and Two remain in conflict on this issue, as noted by the Court of Appeals in this case. *Durland v. San Juan County*, 175 Wn. App. 316, 326 n.6, 305 P.3d 246 (2013) (recognizing that Division Two of this court views this question differently).

aligned private parties who prevailed on procedural grounds, without reaching the merits of the petition); *O'Brien v. City of Bremerton*, noted at 131 Wn. App. 1046, 2006 WL 401702, at *8 (Division Two) (denying attorney fees to *both* the city and an aligned private party because the lower court failed to reach the merits of the petition, as it was dismissed as untimely).

I am not convinced by the majority's attempt to reconcile the inconsistent decisions in the Court of Appeals. The statute is simply not amenable to being split depending on whether the prevailing party is a governmental entity or a private actor. I agree with the Court of Appeals that the statute, read as a whole, must apply in the same way to all affected parties.

I believe Division One has correctly interpreted RCW 4.83.370, particularly the word "prevail," as not requiring a ruling on the merits. I would disapprove of Division Two's interpretation that requires a merit-based win. As the majority acknowledges, we have generally said a party "prevails" when it succeeds in litigation. *Cf. Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997) ("In general, a prevailing party is one who receives an affirmative judgment in his or her favor.").[2] The majority relies too heavily on its own unsupported interpretation

---

[2] We have supported this proposition in other areas of law. *See, e.g., Blair v. Wash. State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (similarly holding in a

of the word "upheld." Majority at 24. However, we have never said that a win on the merits of an action, as opposed to procedural grounds, is necessary for a decision to be upheld. To the contrary, this court's use of the word "uphold" generally supports Division One's interpretation.

We often use the words "uphold" and "affirm" interchangeably, indicating agreement with a lower court's decision. An appellate court may "uphold" the *decision* of a lower court, even when a lower court does not rule on the merits. *See Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 825, 256 P.3d 1150 (2011) ("uphold[ing]" the city's decision to dismiss a land use petition for failing to meet the statutory criteria for relief); *Rasmussen v. Emp't Sec. Dep't*, 98 Wn.2d 846, 848, 658 P.2d 1240 (1983) (affirming the commissioner of the employment security department's decision to "uph[o]ld" the appeal tribunal's dismissal of petitioner's claim as untimely).[3]

The ordinary meaning of the word "uphold" also supports this interpretation. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2517 (2002) (uphold

---

civil rights case); *Andersen v. Gold Seal Vineyards, Inc.*, 81 Wn.2d 863, 865, 505 P.2d 790 (1973) (similarly holding in a tort case).

[3] Another example of this appears in the similar LUPA case of *Knight v. City of Yelm*, where Justice J.M. Johnson states on two separate occasions, "I would *affirm* the decision of the Court of Appeals dismissing Knight's LUPA petition for lack of standing," 173 Wn.2d 325, 349, 267 P.3d 973 (2011), (J.M. Johnson, J., dissenting) (emphasis added), and "I would *uphold* the Court of Appeals in dismissing Knight's LUPA petition for lack of standing," *id.* at 352 (J.M. Johnson, J., dissenting) (emphasis added).

-5-

generally means "to give support to"). An appellate court may "give support to" a lower court's ruling on non-merit-based arguments. For these reasons, I believe Division One is correct in interpreting RCW 4.84.370 as not requiring a ruling on the merits where a party may be awarded attorney fees when it prevails on procedural grounds.

Furthermore, the legislature's use of the passive voice, "is upheld," reflects the different role played by local government in land use appeals. Land use appeals often involve at least three parties—local government, a party challenging the decision, and a party benefiting from the decision. Local government plays two roles in these proceedings, that of a decision-maker and that of a litigant. While local governments are often involved in land use challenges as necessary parties, the private parties that benefit from the land use decision often drive the litigation defending the decision. *See, e.g.*, *Prekeges*, 98 Wn. App. 275 (where US West Wireless, a party aligned with King County who benefited from the county's land use decision, was the party advancing arguments to the court). The legislature's decision to use the passive voice may be a reflection of this dual role, where the local government's *own decision is upheld* by a court while the private parties present arguments to the court.

Lastly, the majority's interpretation gives local governments the perverse incentive to advance weaker, merit-based arguments in favor of stronger, non-merit-based arguments just to recover attorney fees. A local government's strongest argument in a LUPA challenge may be one that does not reach the merits of a case, e.g., where a party files a procedurally invalid challenge, lacks standing, or files after the statute of limitation has run. Under the majority's interpretation, a local government does not recover attorney fees when it successfully defends a LUPA challenge for procedural invalidity. This interpretation leads to strange and illogical results. For example, a city may be aligned with private parties in defending a land use decision. However, if a city succeeds with non-merit-based arguments, the private parties aligned with the city may benefit from the city's argument and receive fees, but the city is left with the cost of litigating a procedurally invalid claim. This is an unjust result not intended by the statute.

The majority's attempt to reconcile the divisional split does not address the conflict in the Court of Appeals and ignores the substance of the debate. To resolve the conflict, RCW 4.84.370 must be interpreted as treating all parties the same. I wholly agree with Division One that a party does not require a ruling on the merits to recover fees. Because the court properly awarded Heinmiller attorney fees, however, I concur with the majority's result.

Stph., J.

Fairhurst, J.

Madsen, C.J.