# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Paternity of

K.M.


RUSSELL HOWARD MCCARTHY,

Appellant,

v.

CHRISTIN GARNES, f/k/a CHRISTIN VALLOR,

Respondent.

No. 78555-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2019

APPELWICK, C.J. — The trial court found McCarthy in contempt for violating a parenting plan provision ordering him to abstain from alcohol. McCarthy argues that the trial court improperly relied on its previous ruling, and arbitrarily established acceptable picogram cutoff levels for ethyl glucuronide tests. We affirm.

## FACTS

On November 12, 2015, the trial court entered a final agreed parenting plan for Russell McCarthy and Christin Garnes (f/k/a Christin Vallor) in the parenting of their child, K.M. Under the plan, McCarthy's residential time with K.M. would increase after McCarthy completed a substance abuse treatment program. The plan also states,

> a. Father shall refrain from consuming any alcohol or non-prescription drugs at any time, including during his residential time with [K.M.] or 8 hours before.

. . . .

c. If the Mother has a reasonable basis, which shall include, but not be limited to, observation of the Father's use of alcohol or non-prescription drugs, odor of intoxicants, impaired ability to drive or function, that leads her to believe the father is under the influence, she shall notify the Father by text message and he shall obtain a [urinalysis] within 24 hours and provide the results to the mother.

On December 22, 2017, Garnes saw a picture of McCarthy on Instagram[1] in which McCarthy appeared to be holding a beer. The picture was posted on or about December 15, 2017. On December 27, Garnes requested that McCarthy take an alcohol test. Because it was at least 12 days after the picture was posted, Garnes alleges that, under an August 3, 2018 order, MCarthy was required to take a hair follicle test.[2]

On December 27, 2017, McCarthy went to Associated Behavioral Health Care for an ethyl glucuronide (EtG) urinary analysis. McCarthy then went to Any Lab Test Now for a hair follicle EtG[3] test. On January 9, 2018, Any Lab Test Now Director of Operations Anita Foster contacted McCarthy and informed him that the chain of custody may have been broken on his hair follicle test and requested that he return for recollection. Foster also informed McCarthy that the hair follicle specimen was sent to ExperTox laboratory the same day, January 9. On January 19, ExperTox sent the results of its test to McCarthy. The test was positive for EtG

---

[1] "Instagram" is a social media platform for sharing photographs.

[2] The August 3, 2017 order states that "any further testing must be consistent with state-certified treatment for the drug type alleged." The order further states, "The test provided must be appropriate and report on the period on which compliance is sought." That order was not appealed.

[3] "EtG" is a metabolite of ethanol that accumulates in the keratinized matrices of hair and nails and remains detectable for several weeks. EtG in hair is a well-established and widely used marker in the field of forensic toxicology for chronic alcohol consumption.

at a level of 18 pg/mg (cutoff 7 pg/mg). Due to what he viewed as Any Lab Test Now's "critical errors and unprofessional conduct," McCarthy submitted to ArcPoint Labs for a nail EtG test and a hair follicle EtG test, on January 22 and January 30, respectively. Both returned negative results for EtG.

On February 23, 2018, Garnes filed a motion for a contempt hearing. She alleged that McCarthy violated the agreed parenting plan, because of her belief that McCarthy had consumed alcohol. After a hearing on the motion on March 14, the trial court ordered McCarthy to obtain a hair follicle test by the end of the day, and continued the hearing until March 28, 2018. The trial court subsequently continued the March 28 hearing until April 11. On April 11, 2018, the trial court adopted the court's findings from the hearing on March 14, and denied the motion for a finding of contempt.

On April 4, 2018, Garnes filed a motion for revision of the contempt hearing order. She asked the court to (1) find McCarthy in contempt, (2) find that McCarthy acted in bad faith, (3) order the purge conditions requested in her motion for contempt, and (4) order McCarthy to pay attorney fees and costs associated with her motion.

On May 16, 2018, the trial court found McCarthy in contempt for not obeying the parenting plan entered on November 12, 2015. On May 25, 2018, the trial court amended its order on contempt, ordering McCarthy to pay Garnes $6,198.90 in attorney fees and costs. McCarthy appeals.

DISCUSSION

McCarthy makes two arguments. First, he argues that, during the May 16, 2018 hearing on the motion for revision on contempt, the trial court erred by not considering the case on the merits and instead relying on its previous ruling from August 3, 2017. In support, he also argues that the trial court erred by establishing "previously undisclosed" picogram (PG) levels as acceptable cutoff levels for alcohol hair follicle EtG tests. Second, he argues that the trial court "ruled punitively" when it ordered him to pay $6,198.90 in attorney fees.

I. Finding of Contempt

McCarthy argues first that the trial court erred in finding him in contempt after the May 16, 2018 hearing.

Punishment for contempt of court is within the sound discretion of the trial court, and this court will not reverse a contempt order absent an abuse of that discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons. Id. at 440.

In determining whether the facts support a finding of contempt, the court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order. In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). This court does not weigh conflicting evidence or substitute our judgment for that of the trial court. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). A trial court's challenged factual findings regarding contempt will be upheld on appeal if they are supported by substantial

evidence. In re Marriage of Rideout, 150 Wn.2d 337, 350-51, 77 P.3 1174 (2003). Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. World Wide Video, Inc. v. City of Tukwila, 117 Wn.2d 382, 387, 816 P.2d 18 (1991). Because it is the role of the trial court, not the appellate court, to find facts, a reviewing court lacks the ability to find persuasive evidence that the trier of fact failed to find persuasive. Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

McCarthy asks this court to find that he did not violate the parenting plan provision prohibiting him from consuming alcohol. During the May 16 hearing, the trial court found McCarthy in contempt based on a positive hair follicle test.

The trial court stated,

> So now we come back before the court, and we are back here on the exact same issue that on either one hand I shouldn't believe the positive tests because they are a wholly unreliable lab, but it is the lab you picked, and so you go back and you get a clean test from them but they are totally unreliable?
>
> I do find contempt in this matter. I do find bad faith because this -- part of it is that all of the materials printed off of the Internet are not helpful to why this particular test for this particular lab, which is actually the question before this court. It is not about what the standards are for cutoff, because ultimately it is this court that determines that.
>
> You agreed and you asked the court to order as part of your agreed parenting plan, 100% abstinence. When you say that Ms. Garnes purposely waited so that a hair follicle test would have been done, if you have been -- if you have been totally abstinent, you shouldn't have any issue taking a hair follicle test for three months prior. . . .

> . . . .

5

> . . . I have looked at all of the -- I have looked at every submission. I found that the nail tests were not sufficient to determine -- to determine sobriety. I find that you can't essentially have it both ways; that either it is a terribly unreliable lab or it isn't, and that the -- the issue I have before me is that I have a positive hair follicle test and I do not have a reason to dispute that, particularly when the cutoff levels of your subsequent tests are higher than the amount that was tested for initially.

McCarthy asserts that, during the May 16, 2018 hearing, the court relied on its own "out of scope" ruling from August 3, 2017. He argues that the August 3 order "add[ed] a provision to the parenting plan requiring an EtG test be taken relative to the time period alleged." That order is not before this court, and we cannot address the merits of its ruling. RAP 5.2.

McCarthy also contends that the trial court erred in relying on the positive EtG result from the January 9 test, because he presented negative results from six other tests taken after the December 27 request. And, McCarthy argues that the court erred in rejecting the negative results from the EtG tests merely because the PG cutoff levels were higher than the cutoff level in the January 9 test. He asserts that the court had not previously provided him with acceptable PG levels, and therefore denied him the ability to comply with submitting acceptable tests.

It is not the province of this court to weigh conflicting evidence. That is the sole discretion of the trial court. The trial court reviewed all of the evidence before it, including the positive hair follicle test result and the subsequent negative test results, and found McCarthy in contempt. The trial court noted that the tests which produced the negative results had higher cutoff levels of pg/mg when compared to the test with the positive result.

6

To support her motion for contempt filed on February 23, Garnes filed a declaration from expert, Dr. Tracy Skaer, a licensed pharmacist in Washington. In her declaration, Dr. Skaer points to the differences between the EtG tests McCarthy submitted. She writes, "Research indicates that positive EtG hair tests are, with almost 100% certainty, true positives." The January 9 hair test, which was positive for EtG at a level of 18 pg/mg, had a cutoff of 7 pg/mg. To explain the cutoff levels, Skaer writes, "EtG concentration of between 7 and 30 pg/mg corresponds to moderate alcohol consumption; abstinence is disproved." And, "EtG concentration of less than 7 pg/mg indicates no regular alcohol use, occasional use is possible, and abstinence cannot be disproved."

Clarifying the difference between hair follicle and nail testing, Dr. Skaer writes,

> Research studies examining EtG levels in nails are sparse. As a consequence, nail EtG testing is considered an alternative to hair testing for cases where there is insufficient hair (e.g., newborns, alopecia) or when cosmetic hair treatments (e.g., hair dye, perming, bleaching) are used that may reduce EtG content within the hair shaft. Cutoffs established for measuring EtG in hair are not comparable to those used in nails. . . . As with negative hair testing, negative nail testing is not an indicator of abstinence. EtG concentrations in nails are affected by individual growth rate, the presence of sweat, hand washing, and the time course of abstinence before sampling.

McCarthy's fingernail test, which he had on January 22, subsequent to the positive hair follicle test, had a result of "below the screen cutoff of 20 pg/mg."

Dr. Skaer further explains about nail tests:

> The mean elimination half-life, the time it takes to decrease the EtG concentration by half, for EtG in nails is about 13 days. In other words, a nail EtG concentration of 35 pg/mg (positive) would be 17.5

7

pg/mg 13 days later and thereby below the cutoff of 20 pg/mg. Russell McCarthy's nail sample was collected about 38 days post-exposure and 13 days after the second hair EtG test which provided additional time for the EtG level in the nailbed to decline below the cutoff. Given these factors, Russell McCarthy's EtG fingernail result does is [sic] not proof that he had not consumed alcohol in December.

McCarthy points out that he has a hair test, collected on January 30, 2018, which produced a negative result for EtG based on a screen cutoff of 20 pg/mg. Garnes provided expert testimony that an EtG concentration of between 7 and 30 pg/mg corresponds to moderate alcohol consumption. McCarthy does not explain or provide evidence as to why it was appropriate for the lab to use a cutoff level for testing EtG of 20 pg/mg.

The court also observed that the parenting plan requires McCarthy to completely abstain from drinking alcohol. Given the hair follicle test, which showed that McCarthy had an EtG level of 18 pg/mg, which corresponds to moderate consumption, the trial court had substantial evidence to support its finding of contempt. The court did not abuse its discretion.

## II. Attorney Fees

McCarthy argues second that the trial court erred in ordering him to pay Garnes $6,198.90 in attorney fees and costs.

The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity. Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). Whether a trial court is authorized to award attorney fees is a question of law, which we review de novo. Id. When attorney fees are authorized, we will uphold

8

an attorney fee award unless we find the trial court manifestly abused its discretion. Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

Under RCW 7.21.030(3), the court may order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney fees.

The trial court ordered McCarthy to pay Garnes $6,198.90 in attorney fees and costs. There is substantial evidence to support the trial court's finding of contempt. It was statutorily authorized to award attorney fees under RCW 7.21.030(3). Garnes's counsel submitted a declaration regarding attorney fees and costs. The trial court's award of fees and costs matches counsel's declaration. The trial court did not abuse its discretion.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Chun, J._                    _Mann, J._

9